

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-17-219

|  |  |
|---|---|
| | **Opinion Delivered** September 6, 2017 |
| AMANDA THREADGILL<br>APPELLANT | APPEAL FROM THE YELL<br>COUNTY CIRCUIT COURT,<br>NORTHERN DISTRICT<br>[NO. 75NJV-15-33] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN<br>SERVICES AND MINOR CHILD<br>APPELLEES | HONORABLE TERRY SULLIVAN,<br>JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

This is an appeal from an order entered on December 19, 2016, by the Yell County Circuit Court, terminating appellant Ethel "Amanda" Thomas Threadgill's parental rights to her minor child, I.T. (born January 25, 2004).[1] Amanda argues that the circuit court clearly erred in terminating her parental rights because appellee, the Arkansas Department of Human Services (DHS), failed to prove grounds supporting termination. We affirm.

The record shows that the initial removal by DHS of I.T. and her older sister, T.W. (born December 16, 1998),[2] from Amanda's custody was on July 31, 2015, based on allegations

---

[1]The parental rights of I.T.'s father, Anthony Triggs, were also terminated pursuant to the same order, but he has not appealed.

[2]T.W. was part of this case; however, because she was three months from her eighteenth birthday at the time the petition to terminate parental rights was filed, DHS did not pursue termination of Threadgill's rights to her.

of neglect; specifically, failure to protect. The affidavit filed with the petition for emergency custody and dependency-neglect alleged that the Arkansas State Police had an open investigation of sexual abuse of T.W.[3] perpetrated by Amanda's husband, Isaiah. As part of that investigation, Amanda had agreed to keep I.T. and T.W. away from Isaiah at all times. It was alleged in the affidavit, however, that Amanda, I.T., and T.W. had been seen in a vehicle with Isaiah and that Amanda admitted Isaiah was in the car with her and the girls.

The circuit court adjudicated I.T. and T.W. dependent-neglected on October 7, 2015. The court found that T.W. gave a video-taped statement claiming that Isaiah sexually abused her and that she had been diagnosed with a sexually transmitted disease. The court also found that there was evidence that T.W. had been sexually abused in the past by her grandfather, her uncle, and her mother's ex-boyfriend. Amanda testified at the adjudication hearing, denying that Isaiah sexually abused T.W. and claiming that T.W. made up the story. Amanda conceded that she broke her promise not to have Isaiah around T.W. or I.T. The court did not find that Isaiah sexually abused T.W.; however, the court did find that T.W. had been sexually abused in the past and now had a sexually transmitted disease. The court further found that Amanda had failed to comply with the protection plan and that T.W. was fearful to go home. The court found that the goal of the case was reunification and ordered Amanda to submit to drug testing; attend and complete parenting classes; obtain and maintain stable housing and income; attend counseling; cooperate with DHS; and comply with the case plan.

---

[3]The record reflects that T.W. has the mental capacity of a kindergartner.

A review-hearing order was entered on December 11, 2015, wherein the circuit court found that Amanda was complying with the case plan by attending counseling, parenting classes, and NA/AA meetings; attending visitation; and maintaining transportation. However, she was living with Isaiah, and he was her main source of income. A second review-hearing order was entered on April 22, 2016. In that order, the circuit court found that Amanda was complying with the case plan by completing parenting classes; attending counseling and visits; and having appropriate housing, income, and transportation.

Following a permanency-planning hearing, an order was entered on August 10, 2016, wherein the circuit court found that there had been some progress toward the case plan but without further detail, found that not enough progress had occurred for reunification. The court set the matter for a fifteen-month permanency hearing, adding that the case could be heard as a termination-of parental-rights case if DHS filed and properly served a petition.

DHS filed a petition for termination of parental rights on September 23, 2016. DHS alleged two grounds to support termination against Amanda—"failure to remedy," Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)*(a)* (Repl. 2015) and "subsequent factors," Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)*(a)*.

After a hearing, the court, from the bench, granted DHS's petition to terminate Amanda's parental rights to I.W. The court found that DHS had made meaningful efforts to rehabilitate Amanda, which included parenting classes; counseling, which Amanda attended sporadically; visitation; and other assessments "to no avail." The court found that Amanda had had domestic-violence issues with her husband, Isaiah, to whom she was still married; she had very recently revealed that she had an addiction to methamphetamine; she had used

methamphetamine during the case; she had moved numerous times during the case; and she was living with a new boyfriend, who gave her $300 a month to meet her expenses. The court lastly found that affording Amanda three additional months to work on her case would not result in reunification. The court stated that "there is just too much turmoil in this matter . . . we have had probably more hearings[4] in this case in fourteen months than we have had in I don't know how many cases that I have heard as a judge . . . I just don't see we are making progress . . . and this child needs permanency."

In the termination order entered on December 19, 2016, the circuit court found that Amanda had an unstable financial situation; she failed to display improvement of her parenting skills; she failed to support her children during the case; she had an unstable relationship with Isaiah and had left him;[5] and she had moved back in with I.T.'s father for a day and a half in August 2016, during which time she had used methamphetamine with him. This appeal followed.

We review termination-of-parental-rights cases de novo. *Knuckles v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 463, at 2, 469 S.W.3d 377, 378. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. *Id.*, 469

---

[4]The court stated that it had had seven hearings in the case.

[5]The court referred to an incident during the case, in June 2016, when Amanda and Isaiah were traveling to Little Rock to visit I.T., and they got into an altercation in the vehicle. Amanda testified that Isaiah had been drinking, and he abandoned her in Little Rock. She said that she had to call I.T.'s foster mom to pick her up and drive her to Dardanelle. Amanda further stated that she and Isaiah separated a couple of months later because he was physically abusing her.

S.W.3d at 379 (citing Ark. Code Ann. § 9-27-341 (Supp. 2013); *M.T. v. Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997)). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Id.*, 469 S.W.3d at 379. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.*, 469 S.W.3d at 379. Credibility determinations are left to the fact-finder, here, the circuit court. *Id.*, 469 S.W.3d at 379. Only one statutory ground is necessary to terminate parental rights. *Sanford v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 578, at 11, 474 S.W.3d 503, 510.

In this appeal, Amanda challenges the circuit court's finding of grounds used to terminate her parental rights.[6] Regarding the subsequent-factors ground, she argues that the evidence does not support the circuit court's finding that DHS provided appropriate family services.

The subsequent-factors ground, section 9-27-341(b)(3)(B)(vii)*(a)*, states:

That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*. Amanda argues that there was no evidence that DHS offered "appropriate family services."[7] She contends that although DHS provided

---

[6]Amanda does not challenge the circuit court's finding that termination was in I.T.'s best interest.

[7]Amanda does not dispute the other required elements of the subsequent-factors ground.

SLIP OPINION

general services to her, i.e., parenting classes, counseling, and visitation, no services were offered to address Amanda's specific needs, i.e., her drug addiction or her volatile marriage with Isaiah.

DHS contends that Amanda's argument is procedurally barred because she did not appeal from prior orders in which the circuit court found reasonable efforts by DHS despite the fact that, under Arkansas Supreme Court Rule 6-9(a)(1), they were final, appealable orders. DHS contends that the failure to appeal from any of the previous orders in which a circuit court has determined that DHS made meaningful efforts toward reunification precludes this court from reviewing those findings with respect to the periods of time covered by those prior orders.

In *Schubert v. Arkansas Department of Human Services*, the supreme court stated that, "[p]ursuant to Rule 6-9(a)(1)(B), disposition, review, and permanency planning orders are only appealable . . . if the court enters an order in compliance with Ark. R. Civ. P. 54(b) (2009). Thus, not every order entered in a dependency-neglect case can be immediately appealed[.]" 2009 Ark. 596, at 5, 357 S.W.3d 458, 461; s*ee also Bean v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 58, at 3.

Here, the circuit court found that DHS had made reasonable efforts to provide family services in its December 11, 2015 review order; its April 22, 2016 review order; and its October 20, 2016 fifteen-months review order. However, none of these orders have Rule 54(b) certificates. Further, Amanda raised the argument at the termination hearing. Accordingly, she has not waived her argument regarding the services offered by DHS.

In reaching the merits of this argument, we hold that the circuit court did not clearly err in finding that DHS provided appropriate family services to Amanda. DHS provided foster care, therapeutic foster care, case-management services, PACE evaluation, DDS referrals, medical services, counseling for the juveniles, counseling for Amanda and Isaiah, transportation, parenting classes, visitation, and transitional life services for T.W. There was evidence that the parenting classes addressed domestic-violence issues. Further, while Amanda argues that she needed drug treatment, the evidence shows that Amanda did not disclose her methamphetamine addiction to DHS. She testified that she did not tell DHS or the circuit court about her meth addiction when they asked because "it seemed like you all wasn't really serious." She first shared this information with her counselor in September 2016—just one month prior to the termination hearing. At the hearing, she testified that she was an addict and that she had used methamphetamine during the case. Finally, the circuit court stated in its oral findings that, based on the "turmoil" in the family, three months' additional time requested by Amanda for further DHS services would not result in the progress needed to reunite her with I.T. Based on this evidence, we hold that the circuit court did not clearly err in finding that DHS provided appropriate family services to Amanda sufficient to support the subsequent-factors ground. We affirm.[8]

Affirmed.

KLAPPENBACH and MURPHY, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.
*Andrew Firth* and *Mary Goff*, Office of Chief Counsel, for appellee.
*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.

---

[8]Because we are affirming the subsequent-factors ground, we need not address Amanda's challenge to the failure-to-remedy ground.