ROBERT J. GLADWIN, Judge
Appellant Marleny Reyes-Ramos appeals the Pulaski County Circuit Court's May 16, 2018 order terminating her parental rights to her three children.[1] On appeal, appellant argues that the circuit court erred by finding that appellee Arkansas Department of Human Services (DHS) offered *34 her appropriate family services and that there was little likelihood of successful reunification. We affirm.
I. Procedural History and Facts
DHS filed a petition for ex parte emergency custody and dependency-neglect on May 1, 2017, alleging that three children were at substantial risk of serious harm as a result of abuse, neglect, and parental unfitness. The attached affidavit by DHS agent Tiffany Robinson avowed that appellant and Rolando Juarez lived together with Juarez's child, C.J. (born 9/26/2014), and appellant's two children, J.M. (born 5/13/2013) and D.R. (born 6/08/2011). Appellant and Juarez had taken C.J. to Arkansas Children's Hospital for vaccinations on April 26, 2017, when the medical staff noticed that he was covered in bruises. It was believed that C.J. had a ruptured gallbladder, but doctors discovered the gallbladder was still intact during emergency surgery. Doctors found a rib fracture, pancreas bruises, and a duodenal hematoma (an indication of trauma). The child also had several external bruises to his face, back, and bottom at different healing stages. Juarez told the doctor that C.J. had fallen into a table causing the bruise to his upper eye. Juarez also said that C.J. had vomited five times that day before going to the hospital. Dr. Hollingsworth told investigators that the injuries were consistent with those caused by blunt force. She also said that injuries to the abdomen, bladder, and the rib fracture were all fresh injuries. Detective Matt Harrellson and the hospital social worker, Trevor Arnette, informed Robinson of the above facts and alleged that Juarez had been arrested because he became aggressive when being interviewed by them. DHS removed all three children from appellant and Juarez's custody due to serious physical abuse and Juarez's arrest, and the ex parte order was obtained on May 1, 2017, wherein it was found that DHS had made reasonable efforts to prevent removal of the children from their home.
After a hearing on May 8, 2017, an order was filed finding that probable cause continued to exist that the children should be protected and remain in DHS custody. The court found that it would be harmful to return appellant's two children to her because she had not been able to show that she could protect them from Juarez, who had allegedly harmed his son, C.J. The circuit court ordered that appellant would receive supervised visitation with her two children at the DHS office three times each week, two hours each visit.[2] Appellant was ordered to cooperate with DHS; notify DHS of any change in residence, phone number, place or status of employment; notify DHS if transportation assistance was needed for visitation or any services; and attend all medical appointments for the children when notified by DHS.
All three children were adjudicated dependent-neglected by order filed July 3, 2017. The court made this finding by "more than a preponderance of the evidence" due to abuse and parental unfitness by Juarez and neglect and parental unfitness by appellant. The court also recited expert testimony regarding C.J.'s extensive internal injuries from blunt force trauma and a doctor's diagnosis of child physical abuse. The doctor testified that the parents' explanations for the child's injuries were not plausible. The court found that Juarez and appellant were not credible in their testimony about how C.J. had been injured. The court also recited testimony from D.R. that Juarez disciplined by hitting them with a closed fist and a belt and that she had told appellant when the *35 abuse was happening. Detective Harrellson testified that he had charged Juarez with first-degree domestic battery after conducting his investigation, and the court found that Juarez had inflicted the injuries on C.J. The court specifically held that its prior finding that DHS had made reasonable efforts still stood.
A July 21, 2017 disposition order held that the children were to remain in DHS custody. The goal of the case was reunification of D.R. and J.M. with appellant, with a concurrent goal of permanent custody with a fit and willing relative. The goal for C.J. was to obtain a permanent custodian, including permanent custody with a fit and willing relative, with a concurrent goal of adoption. Visitation orders remained the same, and the court also allowed appellant to visit C.J. under supervision for two hours each week. In addition, appellant was ordered to have a psychological evaluation and follow the recommendations; undergo individual/family counseling as recommended; take medications as prescribed; refrain from using illegal drugs or alcohol; complete parenting classes; obtain and maintain safe, stable housing and stable employment or income; maintain a clean safe home for herself and the children; demonstrate the ability to protect the children and keep them safe; and not discuss the case with the children unless in therapy. The court also found that DHS had made reasonable efforts to provide services to the family to prevent removal and safely reunify the family.
On October 4, 2017, the circuit court consolidated the instant case with case No. JN 2017-960, wherein J.R., born to appellant and Juarez on August 4, 2017, was included in the pending dependency-neglect case.[3] By the same order, J.R. was adjudicated dependent-neglected, and appellant received supervised visitation with J.R. three times a week for two hours each visit. All orders remained the same, including that DHS had made reasonable efforts.
The case was reviewed at a hearing held October 5, and by order filed October 20, the court found that the children should remain in DHS custody because appellant could not protect them. The court's order states, "The Court believes [appellant] is fearful of Mr. Juarez, who controls the household and everything in it." The court found that appellant was not credible and that she and Juarez had violated the court's order by having contact with the children on September 27, 2017. The goals remained the same for the children. The court found that DHS had made reasonable efforts to provide family services for each of the children to achieve the goal of the case.
An order entitled "Review Order on Issue of Whether DHS Has Made Reasonable Efforts Regarding Juveniles' Separation and to Ensure the Juveniles Have Regular Consistent Visitation or Other Ongoing Contact" was filed December 4, 2017, and it reflects that DHS had made reasonable efforts to place the children together, having placed J.R. with D.R. and J.M. and having found no foster home available to accept all four children. Further, the court found that DHS had made reasonable efforts to ensure the children had regular and consistent visitation with each other.
*36 A permanency-planning hearing was held on February 1, 2018, and the February 23 order reflects that the court considered, among other evidence, appellant's psychological evaluation and a treatment summary from HLH Consultants regarding appellant's therapy. The court noted the history of the case; the injuries, both internal and external, discovered when C.J. was taken for vaccinations ; the expert testimony that the child had been subjected to blunt-force trauma to multiple surfaces of his body wherever there were injuries, and severe blunt-force trauma or traumas to his abdomen; the injuries had been described as those seen as a result of a car accident rather than from children playing rough; the diagnosis of child physical abuse; the explanations given by the parents were not plausible; the doctors were found to be credible; appellant was found not credible; and D.R.'s interview wherein she stated that Juarez disciplined the children by hitting them with a closed fist and a belt and that she had told her mother. At the close of the hearing, appellant's counsel requested more time be given appellant to participate in therapy with J.M. "before the goals here are so drastically changed." However, the court set adoption as the permanency goal for the children.
The court found that appellant was not a fit parent for her three children because she could not protect them and keep them safe. The court noted both the testimony of therapist Kim White regarding the progress made by appellant and Juarez in couple's therapy and Dr. George DeRoeck's psychological evaluation of appellant and his testimony that he was optimistic that the parents could improve and that reunification was a viable goal. The court found that appellant had substantially complied with the case plan and court orders. However, the court noted that it did not
understand how [appellant] and Mr. Juarez can have a safety plan and make so much progress regarding that safety plan when they have never acknowledged why the juveniles were removed from the home and placed in DHS custody. Becoming a fit parent is more than just participating in and completing services. Progress towards remedying the cause of removal cannot be made if there is never an acknowledgment of what happened. Compliance with the case plan and court orders is one thing, but they have not benefitted from the services. Return of the juveniles is not in their best interests and cannot occur in the time frame for the juveniles because [appellant] and Mr. Juarez still maintain the injuries were from an accident. This court has found their explanations not plausible. The court also noted that appellant and Juarez remained married and had moved
into a bigger house a week before the review hearing. Thus, the court found that appellant had made minimal progress toward alleviating or mitigating the causes of the children's removal from the home. The court found that DHS had substantially complied with the case plan and court orders, noting that the permanency-planning court report had been filed late. The court also found that DHS had made reasonable efforts to provide family services.
DHS filed a petition for termination of parental rights on February 28, 2018, and amended it on April 24. The petition alleged three statutory grounds against appellant: (1) child or sibling dependent-neglected due to neglect or abuse that could endanger the life of the child, see Ark. Code Ann. § 9-27-341(b)(3)(B)(vi)(a) (Supp. 2017); (2) other factors arose subsequent to the original petition and, despite the offer of appropriate family services, the parents have manifested the incapacity *37 to remedy those issues, see Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(a) ; and (3) aggravated circumstances due to assault resulting in serious bodily injury to the child, see Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(2) , (3)(A)-(B)(i) and (iii) .
A termination-of-parental-rights hearing held April 18, 2018, resulted in an order, filed May 16, terminating appellant's parental rights to her three children, D.R., J.M., and J.R., based on two grounds alleged in the petition: (1) other factors or issues arose subsequent to the filing of the original petition and, despite appropriate services, the parent has manifested the incapacity or indifference to remedy those issues or factors; and (2) aggravated circumstances. The circuit court denied appellant's request for a continuance based on her argument that "this case could benefit from more time." Among other testimony, Maggie Martinez, property manager for Spanish Valley Apartments, testified that Juarez rented an apartment in the complex and that appellant, although not on the lease, visited the complex four to five times per week.
The circuit court's order recites a detailed history of the case and testimony submitted at the final hearing regarding C.J.'s internal and external injuries caused by blunt-force trauma. It notes the doctor testified that C.J. had been subjected to physical abuse and that the explanations provided by appellant and Juarez were not plausible given the totality of the injuries. The expert said that if the child had not been brought to the hospital at that time, he could have had additional life-threatening complications. The court found by clear and convincing evidence that it was in the children's best interest to terminate parental rights based on both subsequent factors and aggravated circumstances. The court found that even though appellant had been compliant with the case plan, she had not made significant, measurable progress toward remedying the conditions that caused removal because she still maintained the injuries to the child were from an accident. The termination order states:
From the start of this case, this mother has been less than truthful with the court, DHS, and service providers, and the court still does not find her to be credible. Her actions clearly indicate that she has chosen [Juarez] over her children. The court simply does not believe that she and [Juarez] have separated, and the testimony presented at this hearing by DHS workers and Ms. Martinez, the Property Manager at Spanish Valley Apartments, support that. [Appellant] has not benefitted from any of the services that were offered-she has not demonstrated that she can protect these juveniles and keep them safe, or that she is a fit and appropriate parent who will make decisions that are in the juveniles' best interests.
This appeal timely followed.
II. Standard of Review
We review termination-of-parental-rights cases de novo. Knuckles v. Ark. Dep't of Human Servs. , 2015 Ark. App. 463, at 2, 469 S.W.3d 377, 378. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Id. , 469 S.W.3d at 379 (citing Ark. Code Ann. § 9-27-341 (Supp. 2013); M.T. v. Ark. Dep't of Human Servs. , 58 Ark. App. 302, 952 S.W.2d 177 (1997) ). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. Id. , 469 S.W.3d at 379. The appellate inquiry is whether the circuit court's finding that the disputed *38 fact was proved by clear and convincing evidence is clearly erroneous. Id. , 469 S.W.3d at 379. Credibility determinations are left to the fact-finder, here, the circuit court. Id. , 469 S.W.3d at 379. Only one statutory ground is necessary to terminate parental rights. Sanford v. Ark. Dep't of Human Servs. , 2015 Ark. App. 578, at 11, 474 S.W.3d 503, 510.
Threadgill v. Ark. Dep't of Human Servs. , 2017 Ark. App. 426, at 4-5, 526 S.W.3d 891, 894.
III. Aggravated Circumstances
Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)(a)(3)(B) provides as follows:
"Aggravated circumstances" means:
(i) A juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification[.]
Appellant argues that the circuit court's finding that there would be little likelihood of successful reunification goes against the weight of the expert testimony. She cites both Dr. DeRoeck's testimony that reunification could be successful and J.M.'s therapist's testimony that it would be in his best interest to participate in family therapy with appellant. Appellant's therapist testified to her progress and commitments to the safety plan, and appellant acknowledged that she should have sought medical care sooner. DHS agent Lauren Hill testified that maintaining a home separate from Juarez would be one way to protect the children, and she confirmed that appellant had a separate home even though appellant and Juarez were still in contact with one another. And appellant argues that despite there being no indication that she would not continue to improve, the circuit court found little likelihood of successful reunification because of appellant's lack of acknowledgement of the reasons why DHS took custody of the children. Appellant contends that the circuit court erred by relying on the testimony of the apartment manager that she was staying with Juarez instead of the experts' testimony.
Finally, appellant argues that the circuit court improperly shifted the burden to her to prove that she was a fit parent by stating, "[S]he has not demonstrated that she can protect these juveniles and keep them safe, or that she is a fit and appropriate parent." She contends that the burden is DHS's to prove that she is not fit, citing Choate v. Arkansas Department of Human Services , 2017 Ark. App. 319, 522 S.W.3d 156. However, the instant case is distinguishable from Choate , wherein we reversed the termination on subsequent-factors grounds as to the father because no facts supported subsequent factors for the father; the circuit court simply stated that he had not demonstrated that he was a fit and proper parent. Id. at 17, 522 S.W.3d at 165. This court noted that it is DHS's burden to prove parental unfitness, not a parent's burden to prove that she is fit. Id.
We agree with DHS's contention that sufficient evidence supports the circuit court's finding of aggravated circumstances. A parent's continued inability to protect and care for his or her child and failure to benefit from the services provided demonstrate little likelihood that further services will result in a successful reunification. Bentley v. Ark. Dep't of Human Servs. , 2018 Ark. App. 374, 554 S.W.3d 285. Further, when a case involves physical abuse, it is extremely important for a parent to demonstrate an ability to protect the child from physical harm before he can return to the parent's custody. See id. (wherein appellant would not acknowledge abuse to her child by live-in *39 boyfriend until he had been sentenced for the abuse). Finally, a circuit court's repeated findings that the mother lacked credibility demonstrated overwhelming evidence to support the aggravated-circumstances finding. Id. at 12, 554 S.W.3d at 293.
As in Bentley , the circuit court found that appellant lacked credibility throughout the entire case. Further, appellant had completed all services in the case plan, and there was testimony from DHS agent Hill that there were no further services that DHS could offer for reunification, despite Hill's testimony that she had received a recommendation for appellant to participate in J.M.'s therapy. Nonetheless, Hill testified that appellant did not acknowledge that Juarez had abused C.J., causing life-threatening injuries, and she continued contact with Juarez throughout the case. Accordingly, the circuit court did not clearly err in finding that appellant had not benefited from DHS's services to demonstrate the ability to keep the children safe. Appellant requests that this court reweigh the testimony and evidence which is impermissible under our standard of review. Bentley , 2018 Ark. App. 374, at 13, 554 S.W.3d at 293 (holding that under the standard of review, we do not act as a super fact-finder, and it is not reversible error for the circuit court to weigh the evidence differently than how the appellant asks the evidence to be weighed). Because only one statutory ground is necessary to be proved to support a termination order, we need not discuss appellant's subsequent-factors argument. See Threadgill , supra.
Affirmed.
Glover and Vaught, JJ., agree.

The circuit court's order also denied termination of parental rights as to Josue Murcia, legal father of J.M.; granted termination of parental rights as to Maria Soledad Calderon Gomez, mother of C.J.; and granted termination of parental rights as to Rolando Juarez, father of C.J. and J.R. However, none of these parties are included in the appeal of the circuit court's termination order.

Juarez was not allowed visitation with C.J. due to a no-contact order from another court.

By order filed August 31, 2017, in case No. JN 2017-960, we learn that DHS took a seventy-two-hour hold on J.R. on August 24, 2017, to protect his health and physical well-being. On August 28, DHS filed an ex parte petition for emergency custody, and an order was filed on the same date placing J.R. in DHS custody. Probable cause was found to exist to continue custody of J.R. with DHS based on the severity of the physical abuse to his sibling, C.J.