Cite as 2022 Ark. App. 34

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CV-21-395

| | |
|---|---|
| JOHN CULLUM<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | **Opinion Delivered** January 26, 2022<br><br>APPEAL FROM THE SEARCY COUNTY CIRCUIT COURT [NO. 65JV-19-11]<br><br><br>HONORABLE SUSAN WEAVER, JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

## PHILLIP T. WHITEAKER, Judge

Appellant John Cullum appeals from an order of the Searcy County Circuit Court terminating his parental rights to his son, A.K. (d/o/b/ 5-8-19). Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(j) (2021), Cullum's attorney has filed a no-merit brief and a motion to withdraw as counsel contending that there are no issues of arguable merit to support an appeal.[1] Having examined the record, we are satisfied that there are no issues of

---

[1] A memo from our clerk's office indicates that a copy of counsel's no-merit brief and motion to withdraw, along with a letter notifying him of his right to file pro se points, were mailed to Cullum in September 2021 but returned to the clerk's office. A second attempt to serve Cullum the packet was made in October 2021, but it was returned to the clerk's office, and tracking information for the packet reflected that Cullum had moved and left no address.

arguable merit to support an appeal. We therefore affirm the termination decision and grant counsel's motion to withdraw.

## I. *Factual and Procedural History*

The Arkansas Department of Human Services (DHS) removed A.K. from the custody of Jaycee Knight,[2] A.K.'s mother, after receiving a hotline report detailing concerns with Knight's-mental health status,[3] her ability to take care of A.K., and the physical condition of Knight's home. On May 31, 2019, DHS filed a petition for dependency-neglect against both Knight and Cullum, A.K.'s putative father.

DHS initiated contact with Cullum regarding his status as a putative father. He denied that he is A.K.'s father but nonetheless appeared at the probable-cause hearing, after which the court entered a probable-cause order in which Cullum was ordered to submit to paternity testing.

Cullum failed to appear at the adjudication hearing.[4] The court found that he was not a fit parent for purposes of visitation or custody because his rights as a putative parent had not yet attached and because Cullum has another child who had recently been taken into foster care due to alleged physical abuse at his hands. The court determined, however, that Cullum could begin visitation once he established paternity. Cullum subsequently

---

[2]Knight executed a consent to termination and is not a party to this appeal.

[3]Knight is schizophrenic, refused to take her medicine, reported having delusions and hearing voices, and admitted having violent outbursts due to her schizophrenia.

[4]The court adjudicated A.K. dependent-neglected on the basis of Knight's stipulation as well as its finding that she was unable or unwilling to provide the necessary support and care for A.K. and had mental and emotional issues that prevented her from properly caring for him.

submitted to DNA testing, and the court entered an order adjudicating Cullum to be A.K.'s legal and biological father and awarding him supervised visitation for four hours a week.

In a November 2019 review order, the court determined that Cullum had not complied with the case plan and court orders. Cullum had failed to complete psychological evaluations and had not followed the recommendations of his drug-and-alcohol assessment.[5] With regard to visitation, Cullum had attended only fifteen and a half out of thirty-four hours. Consequently, the court found that placement in Cullum's custody was contrary to A.K.'s welfare. Nonetheless, the court found that the visitation plan was appropriate, ordered Cullum to comply with the case plan and court orders, and left the goal of the case as reunification with a concurrent goal of adoption.

In an April 2020 review order, the court again found that Cullum had not complied with the case plan. The court noted that Cullum had been incarcerated since January 2020 and remained incarcerated at the time of the hearing. The court scheduled a permanency-planning hearing.

Following that hearing, the court entered a permanency-planning order making several findings. Concerning drug screens and visitation, the court found that DHS had not made reasonable efforts. Specifically, the court noted that DHS did not drug screen Cullum while he was incarcerated and did not facilitate visitation between A.K. and Cullum while Cullum was incarcerated. The court found, however, that DHS had complied with the case plan and provided family services to achieve the goal of reunification. Concerning Cullum's

---

[5]The assessment recommended inpatient rehab, attendance in anger-management classes, or participation in IFS therapy.

compliance, the court found that he was in only minimal compliance but did note that Cullum had been recently released from incarceration to enter GYST House, a transitional home in Little Rock for substance-abuse therapy.

The court held a fifteen-month review hearing in September 2020. At this hearing, the court learned that Cullum had been discharged from GYST House without completing the program, even though he had entered the program as a condition of his bond on charges for aggravated assault against his other son.[6] After his discharge, Cullum did not contact DHS promptly, tested positive for THC, continued to face criminal charges involving his other child, and was charged with a new misdemeanor for a fight while in jail. Further, Cullum was not in drug treatment despite his positive drug screen, was not in mental-health counseling as recommended by his psychological evaluation, and his home was not an appropriate place for A.K. As a result, the court found that the goal of reunification was no longer appropriate for A.K. and changed the primary goal of the case to adoption.

DHS filed a petition for termination of parental rights alleging multiple statutory grounds against Cullum. A.K.'s attorney ad litem also filed a petition for termination of parental rights.[7] The court held a termination hearing via Zoom and heard testimony from Cullum, DHS, Dr. George DeRoeck, and a representative from GYST House. Before entering a final decision, the court ordered Cullum to submit to urine and hair-follicle drug screens. Subsequently, the ad litem moved to supplement the record. Exhibits attached to

_____

[6]Cullum had been asked to leave GYST House after a disagreement with its director.

[7]At the termination hearing, the ad litem and counsel for DHS agreed that DHS would "stand down," and they would go forward on the ad litem's termination petition.

4

the motion included (1) the results of Cullum's hair-follicle test reflecting that he had tested positive for methamphetamine and amphetamine and (2) photographs of Cullum's residence. Cullum did not respond to the motion to supplement.

Three months after the termination hearing, the circuit court entered an order terminating Cullum's parental rights. The court found three statutory grounds for termination: (1) twelve-month failure to remedy by a noncustodial parent; (2) subsequent other factors; and (3) aggravated circumstances. In addition, the court determined that termination was in A.K.'s best interest, finding that A.K. is adoptable and that A.K. would be at risk of potential harm if returned to Cullum. Cullum was declared indigent for purposes of appeal and filed a timely notice of appeal.

## II. *Standard of Review*

Arkansas Supreme Court Rule 6-9(j)(1) allows counsel for an appellant in a termination case to file a no-merit brief and motion to withdraw if, after studying the record and researching the law, counsel determines that the appellant has no meritorious basis for appeal. In the brief, counsel must include an argument section that lists all circuit court rulings that are adverse to the appellant on all objections, motions, and requests made by the party at the hearing from which the appeal arose and an explanation why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(j)(1)(A).[8] In evaluating a no-merit brief, we determine whether the appeal is wholly frivolous or whether there are any

---

[8]Additionally, the brief's statement of the case and the facts shall contain all rulings adverse to the appellant made by the circuit court at the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(j)(1)(B).

issues of arguable merit for appeal. *Linker-Flores, supra*; *Rocha v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 454, 637 S.W.3d 299.

Our caselaw recognizes that the termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Fox v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 666, 448 S.W.3d 735. In termination-of-parental-rights matters, the circuit court is required to follow a two-step process by finding first that the parent is unfit and second that termination is in the best interest of the child. *T.J. v. Ark. Dep't of Hum. Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997); *Smith v. Ark. Dep't of Hum. Servs.*, 2013 Ark. App. 753, 431 S.W.3d 364. As a result, DHS bears a heavy burden in seeking to terminate the relationship of parent and child. *Rauls v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 366.

III. *Analysis*

A. Statutory Grounds

To terminate parental rights, a court must find sufficient proof of one or more of the statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2021). Here, the court terminated Cullum's parental rights finding three grounds: twelve-month failure to remedy by a noncustodial parent, subsequent other factors, and aggravated circumstances. Although the circuit court found three statutory grounds for termination, we may affirm a termination on only one ground. *Rauls, supra*. We hold that there was ample evidence submitted to support the court's aggravated-circumstances finding.

A court of competent jurisdiction may terminate parental rights when the parent is found to have subjected any juvenile to aggravated circumstances. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)*. As applied in this case, aggravated circumstances means that "a

6

determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification." Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(B)(i)*. To prevail on this ground, DHS was required to demonstrate that if appropriate reunification services were provided, there is little likelihood that reunification could be achieved. *Rocha*, *supra*; *Yarborough v. Ark. Dep't of Hum. Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

Here, Cullum had received various services throughout the proceeding. He received two placements in drug rehabilitation but continued to test positive for illegal drugs. In fact, Cullum conceded that he continued to have a drug problem. He received a psychological evaluation and mental-health treatment. Despite these services, however, he was discharged from GYST House due to his anger, and he sent several threatening text messages to DHS personnel. While Cullum claimed he no longer has anger-management issues—which he credited to counseling that he started attending in November 2020—he had participated in only seven outpatient visits by the time of the termination hearing.

In addition, Cullum repeatedly failed to comply with the case plan and court orders. At the time of the termination hearing, Cullum was still facing criminal charges concerning another child, S.C.,[9] and he had picked up new charges while incarcerated. Concerning stable housing, Cullum had never established housing appropriate for placement. In fact, the home in which he claimed as a residence was cluttered and resembled a business property

---

[9]S.C. was removed from Cullum's custody after an incident in which Cullum choked S.C. and pinned him against a wall by his neck. Cullum was arrested and spent several months in jail in early 2020 after second-degree battery charges were filed against him. A separate DHS case was opened as to S.C.

7

more than a home, as depicted in the attachments to the posthearing motion to supplement filed by the ad litem.

In its termination order, the circuit court found as follows:

> John Cullum has pending felony charges for choking and pinning [S.C.] against the wall by his neck. Additionally, the court [finds] that there is little likelihood that continued services to John Cullum will result in a successful reunification, as Mr. Cullum has had in excess of eighteen (18) months to place himself in a position to regain custody of A.K. Despite the offer of services, Mr. Cullum has not demonstrated the ability to overcome his substance abuse and anger issues. He has not demonstrated any form of stability in housing or income. He has failed to complete the services offered to him and has shown no improvement or benefit from the services he did complete. A.K. has spent nearly his entire life in foster care, and he deserves permanency. There is little chance that A.K. can be placed with his father within a timeframe that would be meaningful to such a young child who has waited so long already.

In her no-merit brief, counsel correctly notes that this court has consistently found that similar failures by a parent will support an aggravated-circumstances finding. Indeed, we have frequently held that a parent's failure to benefit from the services provided demonstrates little likelihood that further services will result in a successful reunification. *Jones v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 299, 578 S.W.3d 312; *Reyes-Ramos v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 46, 571 S.W.3d 32; *Bentley v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 374, 554 S.W.3d 285. In *Nichols v. Arkansas Department of Human Services*, 2018 Ark. App. 85, at 11, 542 S.W.3d 197, 204, we affirmed a termination on the aggravated-circumstances ground when the parents "after receiving a year of services, . . . had not addressed their anger problems." Likewise, we have affirmed on aggravated-circumstances grounds when the parent failed to maintain sobriety or demonstrate stability after having received services for years. *Snider v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 502, 612 S.W.3d 199. Accordingly, we agree with appellate counsel that the circuit court's

8

findings are supported by the testimony and evidence presented at the termination hearing and are sufficient to support an aggravated-circumstances finding.

## B. Best Interest

In addition to finding the existence of at least one statutory ground in order to terminate parental rights, a court must also find that termination of parental rights is in the child's best interest, taking into consideration two statutory factors: (1) the likelihood of adoption if parental rights are terminated and (2) the potential harm caused by continuing contact with the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). Here, the court considered both statutory factors in light of the overall evidence, finding that termination was in A.K.'s best interest. Counsel contends that there are no issues of arguable merit for reversal in challenging this best-interest finding.

Regarding adoptability, both a court-appointed special advocate and a caseworker testified that A.K. is adoptable. Counsel cites *Reed v. Arkansas Department of Human Services*, 2010 Ark. App. 416, for its holding that the testimony of a caseworker that a child is adoptable is sufficient to satisfy the statute. We agree.

Regarding potential harm, the circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Ross v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 503, 529 S.W.3d 692. Potential harm must be viewed in broad terms, and "potential" necessarily means that the court is required to look to future possibilities. *Id.* A parent's past behavior is often a good indicator of future behavior and may be viewed as a predictor of likely potential harm should the child be returned to the parent's care and custody. *Rickman v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 261, 548 S.W.3d 861.

The court heard ample evidence on the issue of potential harm. Cullum has a long history of anger issues, including battery charges against his other child for which he was still facing criminal charges. In addition, Cullum continued to use drugs and lacked stable housing. DHS personnel testified that A.K. could be the object of Cullum's anger and expressed concerns about Cullum's ability to parent a young child and remain sober. The circuit court found this testimony "to be credible and the father's continued drug use, lack of stable housing and lack of control of his anger . . . demonstrate how A.K. would be at risk of potential harm if returned to his father."

Counsel argues that in light of the evidence, the court's finding that A.K. would be at risk of physical and emotional harm based on Cullum's ongoing anger issues and his lack of "long-term stability despite A.K. having been in foster care nearly two years since removal" is correct. We agree.

Our review of the record reveals that counsel correctly determined that, other than the termination decision, there were no other rulings adverse to Cullum during the proceedings. We therefore affirm the termination of Cullum's parental rights and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

VIRDEN and GLADWIN, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.