Cite as 2024 Ark. App. 458

# ARKANSAS COURT OF APPEALS

DIVISION II
NO. CV-24-225

| | |
|---|---|
| CASSANDRA ARMENTO | Opinion Delivered September 25, 2024 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, EIGHTH DIVISION |
| V. | [NO. 60JV-22-279] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE TJUANA BYRD MANNING, JUDGE |
| APPELLEES | |
| | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Cassandra Armento appeals after the Pulaski County Circuit Court filed an order terminating her parental rights to her children, Minor Child 1 (MC1) (DOB 08-27-18); Minor Child 2 (MC2) (DOB 08-07-10); and Minor Child 3 (MC3) (DOB 10-09-13).[1] Appellant generally argues on appeal that there was insufficient evidence to support the statutory grounds for termination. More specifically, she argues that (1) there was insufficient evidence to support the circuit court's finding that the Arkansas Department of Human Services (DHS) offered either the meaningful efforts or appropriate family services

---

[1]Allen Conaway is the father of MC1 and MC2, and Wendell Ferguson is the father of MC3. Neither father is a party to this appeal. This case also involved a fourth child, Minor Child 4 (MC4), but MC4's goal was set as a guardianship. Accordingly, the termination-of-parental-rights petition did not seek to terminate MC4's parents' rights, and appellant's parental rights were not terminated as to this child.

required for the failure-to-remedy and other-subsequent-factors grounds, respectively; and (2) there was insufficient evidence to support the circuit court's finding that appellant willfully failed to provide significant material support or to maintain meaningful contact.  We affirm.

I. *Relevant Facts*

On May 2, 2022, DHS filed a petition for emergency custody and dependency-neglect. In the affidavit attached to the petition, DHS explained that it had previously opened a protective-services case for this family in which it offered appellant referrals to 100 Families and Triple P, an in-home service.  On April 28, 2022, a friend of the family told DHS that appellant had left her children with people who could not care for them after she was arrested.  A family-service worker visited the home and met with the caregivers.  Appellant had been incarcerated for six days at that point, and the caregivers were no longer able to take care of the children due to lack of money and transportation and because they had prior obligations.  Additionally, the caregivers admitted using THC but declined to submit to a drug screen.  During an interview at the county jail, appellant stated that she had paid her friends $300 to care for the children while she was incarcerated and explained that "all I did wrong was sold drugs."  DHS removed the children from the home, and after exercising a hold, the children told the DHS worker they were hungry and had not eaten in a while.

The circuit court granted the petition for emergency custody, finding that probable cause existed for the removal.  A probable-cause order was filed on June 21, 2022.

An adjudication hearing was held on June 21, 2022, and an adjudication order was filed on August 2, 2022.  The circuit court found the children to be dependent-neglected on

2

the basis of appellant's parental unfitness and accepted appellant's stipulation that she had been arrested and left the children with individuals who were incapable of meeting her children's needs. After their removal, the children had hair-shaft drug screens, which showed that MC1 tested positive for methamphetamine, and MC2 and MC3 tested positive for methamphetamine and amphetamines. The circuit court found that appellant had been arrested four times since the beginning of 2022 for drug-related offenses and once since the children came into DHS's custody; appellant's home was not appropriate for the children; and appellant needed to complete services to address the substance-abuse issues and supervision issues that led to the children's removal. The court ordered that the case goal be custody with a fit parent with a concurrent goal of guardianship with a fit and willing relative. Additionally, it ordered appellant to comply with the case plan and court orders and cooperate with DHS.

On September 20, 2022, the circuit court held a review hearing, and a review order was filed on October 24, 2022. The circuit court ordered that the case plan goal remain reunification with a concurrent goal of guardianship with a fit and willing relative and that the children remain in DHS's custody. The court found that appellant had only minimally complied because she had attended three visits with the children but had not otherwise participated in services. Due to appellant's inconsistency in visitation, the circuit court reduced the visitation order to once a week from twice a week until appellant consistently attended a minimum of six visits. Additionally, the circuit court found DHS had made reasonable efforts to provide family services.

On December 27, 2022, the circuit court held another review hearing, and an order was filed on January 27, 2023. The circuit court ordered that the case plan goal remain reunification with a concurrent goal of guardianship with a fit and willing relative and that the children remain in DHS's custody. The circuit court found that the conditions that caused the children's removal had not been remedied. Regarding appellant's compliance, the circuit court stated that "[t]here is no evidence Ms. Armento has made any progress toward remedying the causes of removal, has been minimally compliant with the case plan and court orders, is causing trauma to her children by not showing up for visits, and has not appeared for the last two court hearings." The court ordered that appellant appear at the DHS office before the children would be transported for visitation. Further, the circuit court found DHS had substantially complied with the case plan and orders of the court and that it had made reasonable efforts to provide family services.

A permanency-planning hearing was eventually held on February 21, 2023, and a permanency-planning order was filed on March 7, 2023. Regarding compliance with the case plan, the circuit court found the following:

> 4. The Court finds that the juveniles are in need of the services of the Department and shall remain in the custody of the Department because it is contrary to their welfare to return them to any parent. Ms. Armento is in jail and has not remedied the conditions that caused removal. . . . The juveniles are all in placements that meet their special needs and best interests, and it is in the children's best interests to remain in the custody of the Department.

> 5. The Department has complied with the case plan and court orders and has made reasonable efforts to provide family services toward the case plan goal. Specifically, the department has offered medical services, PACE evaluations, counseling, foster homes, transportation assistance, clothing vouchers, worker visits,

4

transitional youth services, sibling visits, provisional placement requests, drug screens, drug and alcohol assessment, inpatient drug and alcohol treatment referrals, parenting classes, and home visits.

6. Ms. Armento has not complied with the case plan and court orders. Specifically, she only attended seven (7) of sixty-five (65) possible visits and had an inappropriate conversation with her children that had to be redirected. The Department has not been able to determine if her home is appropriate because she has not made her home available for home visits and told the Department at one point that her water had been shut off. The Court is unsure if she has adequate income to support herself and her children, she has not submitted to drug screens, or participated in substance abuse treatment or mental health counseling. Additionally, the Court notes that Ms. Armento has not attended any hearing since Adjudication.

It was at this hearing that the circuit court changed the goal to adoption. The circuit court further suspended appellant's visitation with the children since she had "not consistently visited her children, and the behaviors that have been exhibited by the children after missed and inconsistent visitation are extreme and harmful."

Thereafter, DHS filed a petition for the termination of parental rights on June 13, 2023, and an amended petition for the termination of parental rights on August 9, 2023. In the amended petition, DHS alleged the failure-to-remedy, other-subsequent-factors, and failure-to-provide-material-support or maintain-meaningful-contact grounds for termination of appellant's parental rights under Arkansas Code Annotated section 9-27-341(b)(3)(B) (Supp. 2023). A termination hearing was held on September 12, 2023.

At the termination hearing, the circuit court admitted DHS's exhibit, including certified copies of the circuit court's previous orders, into evidence without objection.

Alexandrea Arnold-Wiley, the DHS caseworker assigned to the case, testified as to the case history as already outlined. Ms. Arnold-Wiley explained that appellant had failed to comply with the case plan. Appellant completed a drug-and-alcohol assessment, and it was recommended that appellant attend intensive outpatient services for severe methamphetamine-use disorder. She was supposed to attend nine individual sessions and twenty-one group-therapy sessions. However, appellant failed to attend any of the sessions. Appellant further attended only four of twelve parenting classes and was inconsistent in visitation. Because of appellant's inconsistency in visitation and the harm it caused the children when appellant failed to attend, the visitations had to be suspended. Even after the visitations were suspended, appellant made no attempt to restart visitation. Ms. Arnold-Wiley stated that appellant had refused to allow her into the home for home visits or drugs screens. Even though appellant had not communicated with her since the permanency-planning hearing, Ms. Arnold-Wiley testified that she kept all appellant's referrals current and updated, even though appellant failed to comply. Additionally, either she or the clerical administrator would text appellant to "let her know to still partake in services as it's Court-ordered for her to do and that the encumbrance was up to date." Moreover, Ms. Arnold-Wiley had offered transportation to services. She agreed that appellant could not complete services during the few times she was incarcerated.

Ms. Arnold-Wiley testified that the children were doing well in their placements and that their foster parents are willing to adopt them. She did not think that appellant had made any significant progress toward reunification and explained that appellant rarely

showed any initiative to get her children back. She did not think appellant had provided any material support or maintained meaningful contact with her children. Further, she was concerned about the danger and potential risk of harm if the children were returned to appellant. Accordingly, Ms. Arnold-Wiley stated that she thought termination was in the children's best interest.

Rachel Mitchel, a DHS adoptions specialist, testified that there were twenty-two matches found as potential adoptive resources for the three children together and that the current foster parents were interested in adoption as well. She stated that there were no barriers and that the children are highly adoptable.

Appellant testified that she had not moved during the case and that she recently paid for her utilities to be turned back on. She acknowledged that DHS informed her of appointments that she failed to attend or complete. She offered as an excuse that she had car trouble at one point during the pendency of the case. Appellant further acknowledged that she had not had any contact with Ms. Arnold-Wiley since her visitations were stopped in February 2023. When asked why she had not reached out, appellant responded with the following:

> Because what is – My visits were discontinued. What is the point of contacting her and asking about a visit for my kids when I can't get a visit anyway, because the Judge determines that? To me, it was pointless. I was setting myself up for failure.

Appellant testified that she refused to allow Ms. Arnold-Wiley in her home because she "had no water or lights on to clean [her] home." She claimed that the utilities had been restored

for the last two months but that Ms. Arnold-Wiley had not made any attempts to visit her since then.

Appellant stated that she had started drug treatment at Phoenix House. However, she later clarified that she had not attended any counseling sessions but had just completed the paperwork. Appellant alleged that DHS had failed to assist her and expected her "to do everything on my own." She admitted that she had pending felony charges and had been incarcerated three times during the case for eighteen, fifteen, and fourteen days, respectively. Appellant denied that DHS had made meaningful efforts to rehabilitate her. She testified that her children would not be at risk of harm with her and that it is not in their best interest to have her parental rights terminated.

At the conclusion of the termination hearing, DHS requested that appellant's parental rights be terminated, and the attorney ad litem agreed. Both argued that the evidence was sufficient to support all three statutory grounds alleged against appellant and that it was in the best interest of the children to terminate appellant's parental rights. Regardless of appellant's attempt to place blame on the caseworker, DHS argued that it had provided services and that appellant's contention was a "red herring." The attorney ad litem asked the circuit court to find Ms. Arnold-Wiley's testimony that she had offered services throughout the case credible.

Appellant's counsel argued that the petition should be denied because there was insufficient evidence. Counsel argued that there was no evidence that appellant used drugs or posed potential harm to the children. He argued that DHS failed to give appellant the

opportunity to prove that she could parent the children and that DHS failed to make a meaningful effort to rehabilitate appellant. He maintained that appellant had not *willfully* failed to provide significant material support or maintain meaningful contact and that there was insufficient evidence to support the other-subsequent-factors ground.

The circuit court orally ruled from the bench that it was granting the petition for termination of parental rights as to MC1, MC2, and MC3. The circuit court filed a written order terminating appellant's parental rights on January 3, 2024. The circuit court specifically found by clear and convincing evidence that all three grounds alleged in the petition against appellant supported termination and that it is in the best interests of the children to terminate appellant's parental rights. In relevant part to our disposition of appellant's points on appeal, the circuit court made the following specific findings:

11. After considering the evidence, the Court finds that the evidence proves grounds pled in paragraphs A, B, C, D and E of the Amended Petition by clear and convincing evidence as follows:

a. That termination of parental rights is in the best interest of the juveniles, taking into consideration the likelihood that the juvenile will be adopted if the termination petition is granted and that there is potential harm to the health and safety of the juvenile caused by placing the children in the custody of either parent. ACA 9-27-341 (b)(3)(A)(i) & (ii). This ground is proven by clear and convincing evidence as to both Armento and Conaway [MC1 and MC2's father]. The Court finds that the evidence proves the termination of parental rights is in the best interest of the juvenile. In making this finding, the circuit court considered all relevant factors, including the likelihood that the juvenile would be adopted if the parental rights were terminated, and the potential harm, specifically addressing the effect on the health and safety of the juvenile, that could be caused by returning the juvenile to the parents. As to the juveniles' adoptability, the Court finds that the juveniles are adoptable because of the adoption resources from data

9

matching and the current interest of their foster parents. As to potential harm, the Court finds that the juveniles would be subjected to substantial risk of potential harm of further abuse or neglect (physical and mental) if placed with Mr. Conaway and at substantial risk of harm including instability, drug exposure, environmental issues and mental health issues if returned to Ms. Armento.

b. That the juveniles have been adjudicated by the court to be dependent neglected on June 21, 2022, and have continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, these conditions have not been remedied by the parent. ACA 9-27-341 (b)(3)(B)(i)(a). This ground is proven by clear and convincing evidence as to the mother, Cassandra Armento. The Court finds that the children were removed from the mother's custody on April 28, 2022, and have been out of the home for nearly 17 months, that the department made reasonable efforts to provide services to her and she failed to comply or benefit from those services to remedy the conditions that caused removal.

. . . .

d. The juveniles have lived outside the home of the parents for a period of twelve (12) months and the parents have willfully failed to provide significant material support in accordance with their means or to maintain meaningful contact with the juveniles. ACA 9-27-341 (b)(3)(B)(ii)(a). This ground is proven by clear and convincing evidence as to both Ms. Armento and Mr. Conaway. The court finds that Ms. Armento missed 60 visits with her children before it was suspended and neither she nor any other party ever requested the visits be reinstated. The children have not seen their mother in months, and she has failed to maintain meaningful contact with them when she had the opportunity to do so. . . . Both Ms. Armento and Mr. Conaway failed to have meaningful contact with the children or to provide meaningful support for them.

e. That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of either parent is contrary to the juvenile's health, safety or welfare and that despite the offer of appropriate family services, the parents have manifested the incapacity or indifference to

10

remedy the subsequent issues or factors or rehabilitate the parents' circumstances which prevent the placement of the juvenile in the custody of either parent. ACA 9-27-341 (b)(3)(B)(vii)(a). This ground is proven by clear and convincing evidence as to both Ms. Armento and Mr. Conaway. . . . Subsequent to the filing of the DIN petition, Ms. Armento was offered but failed to complete drug treatment or drug screens to prove her sobriety which was needed given the children tested positive for methamphetamines due to exposure and she admitted drug use in her assessment. She failed to complete parenting classes, individual therapy, homemaker services or allow home visits to prove parental fitness. Ms. Armento failed to obtain and maintain safe and stable housing, admitting her utilities were off for months and she that refused DHS access. New harm was caused by the parents' failure to visit the children during the case causing them serious distress. The court finds DHS worker Arnold-Wiley credible in her attempts to provide services to the family. The Court finds that the mother's assertions that her deficiencies are Ms. Arnold-Wiley's fault are misguided and misdirected.

This appeal followed.

## II. *Standard of Review*

A circuit court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Hum. Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a

11

finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to judge the credibility of witnesses. *Id.*

In order to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The order terminating parental rights must also be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). However, only one ground must be proved to support termination. *Reid v. Ark. Dep't of Hum. Servs.*, 2011 Ark. 187, 380 S.W.3d 918.

The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Cobb v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 85, 512 S.W.3d 694. Moreover, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Id.* Finally, a parent's past behavior is often a good indicator of future behavior. *Id.*

III. *Statutory Grounds*

The circuit court granted the termination petition on the basis of the failure-to-remedy, other-subsequent-factors, and failure-to-provide-material-support or maintain-meaningful-contact grounds for termination under Arkansas Code Annotated section 9-27-341(b)(3)(B). Although the circuit court found multiple statutory grounds for termination, only one ground is necessary to support the termination. *See Reid, supra*. Appellant argues that the circuit court erred in terminating her parental rights because there was insufficient evidence to support any of the grounds alleged in the petition to terminate parental rights. We cannot agree and hold that there was sufficient evidence to support at least the other-subsequent-factors ground.

Arkansas Code Annotated section 9-27-341(b)(3)(B) defines the other-subsequent-factors ground as follows:

(vii)(a) That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, *despite the offer of appropriate family services*, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

(Emphasis added.) A parent's failure to comply with court orders can serve as a subsequent factor upon which termination can be based. *Gonzalez v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 425, 555 S.W.3d 915; *Brown v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 104, 542 S.W.3d 899; *Miller v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 396, 525 S.W.3d 48.

13

Following the filing of the original petition, the circuit court ordered appellant to comply with the case plan and court orders and cooperate with DHS. In its termination order, the circuit court found that the following evidence supported this ground:

> Ms. Armento was offered but failed to complete drug treatment or drug screens to prove her sobriety which was needed given the children tested positive for methamphetamines due to exposure and she admitted drug use in her assessment. She failed to complete parenting classes, individual therapy, homemaker services or allow home visits to prove parental fitness. Ms. Armento failed to obtain and maintain safe and stable housing, admitting her utilities were off for months and she that refused DHS access. New harm was caused by the parents' failure to visit the children during the case causing them serious distress.

The circuit court's findings were supported by Ms. Arnold-Wiley's testimony. Ms. Arnold-Wiley testified that appellant failed to attend individual counseling, submit to drug screens, allow home visits, complete parenting classes, or maintain consistent visitation with the children. In fact, because of appellant's inconsistency in visitation and the harm it caused the children when appellant failed to attend, the visitations had to be suspended.

On appeal, appellant argues that because DHS failed an "offer of appropriate family services," it was erroneous for the court to rely on the other-subsequent-factors ground to terminate her parental rights. She claims as she did below that DHS "completely ignored her for the last seven months of the case." She further claims that the circuit "court's findings under this ground that [Ms. Arnold-Wiley] was credible in her attempts to offer services to

remedy this subsequent factor, and that [appellant's] complaints that DHS did nothing for her were misdirected and misguided, are belied by the record." We disagree.[2]

Although appellant argues that DHS completely ignored her after the permanency-planning hearing and failed to offer appropriate services, Ms. Arnold-Wiley testified otherwise. She testified that she made referrals for appellant multiple times throughout the case, ensured that they were still active and available to appellant, and additionally offered transportation to appellant when she was having difficulties with her car. However, due to appellant's failure to attend even a single session, appellant was dropped from services with Recovery Centers of Arkansas ("RCA") where she was to complete intensive outpatient treatment. Ms. Arnold-Wiley testified that she believed appellant knew her service referrals were still active because appellant did complete three of the parenting classes after the February 2023 permanency-planning hearing. Additionally, Ms. Arnold-Wiley testified that either she or the clerical administrator would text appellant to "let her know to still partake in services as it's Court-ordered for her to do and that the encumbrance was up to date." Despite Ms. Arnold-Wiley's testimony that she offered appellant appropriate services during

---

[2]Appellees argue that appellant's argument is not preserved for appeal because she failed to appeal from the circuit court's previous orders finding that DHS had made reasonable efforts. However, appellant specifically raised her services argument at the termination hearing. *See Threadgill v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 426, at 6, 526 S.W.3d 891, 895 (holding that a reasonable-efforts argument was not waived where none of the prior reasonable-efforts findings were in orders containing a Rule 54(b) certificate and appellant raised the argument at the termination hearing); *see also Spears v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 494, 678 S.W.3d 86; *Long v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 372, 675 S.W.3d 158. Accordingly, appellant has not waived her specific argument on appeal.

the entirety of the case, appellant failed to take advantage of and complete those services. Appellant admitted that she did not reach out to Ms. Arnold-Wiley after her visitation was suspended because she thought "it was pointless" and that she was "setting [herself] up for failure." Appellant further admitted during the hearing that she refused to allow Ms. Arnold-Wiley in her home.

The credibility of any witness's testimony is to be assessed by the trier of fact—and the trier of fact may believe all, part, or none of it. *Long, supra*; *Gibby v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 146, 643 S.W.3d 794. Here, the circuit court credited Ms. Arnold-Wiley's testimony over that of the appellant's. On the basis of these facts, we cannot hold that the circuit court clearly erred in its findings and affirm that there was sufficient evidence to support the other-subsequent-factors ground. Because we conclude that DHS adequately proved the other-subsequent-factors ground, we need not discuss the remaining grounds found by the circuit court. *See Kohlman v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 164, 544 S.W.3d 595. Accordingly, we affirm the order terminating appellant's parental rights.

Affirmed.

BARRETT and WOOD, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.