2012 Ark. App. 109

**Sherry TANKERSLEY and Eric Tankersley, Appellants**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and A.T.1, M.T., and A.T.2, Minors, Appellees.**

No. CA 11–910.

Court of Appeals of Arkansas.

Feb. 1, 2012.

Leah Beth Lanford, Little Rock, AR, for appellant.

Tabitha Baertels McNulty, Little Rock, AR and Shelton E. Sargent, Fort Smith, AR, for appellee.

RAYMOND R. ABRAMSON, Judge.

The parental rights of appellants Sherry and Eric Tankersley in their three

children[1] were terminated on June 22, 2011. On appeal, they challenge the sufficiency of the evidence supporting the two statutory grounds the court found for termination: (1) that a juvenile has been adjudicated dependent-neglected and has continued to be out of the custody of the parent for twelve months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent; and (2) that the parent is sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life. We affirm.

The Arkansas Department of Human Services (DHS) took emergency custody of the Tankersley children on September 3, 2009, after reports of maltreatment, neglect, and drug abuse led to a home visit. When DHS first made contact with appellants, they were in the Sebastian County Adult Detention Center (ADC) for receiving stolen goods, and the children had been left in the care of a maternal uncle. Appellants denied currently using drugs,[2] and both had negative drug tests. After a second referral a couple of days later, DHS went to the uncle's house and spoke with the uncle's girlfriend and the children. According to the girlfriend, she and the children's uncle were willing to care for the children but could no longer provide for them. She stated that Sherry had been out of jail for a couple of days but had made no attempt to contact the children or provide anything for them; she believed Sherry was using illegal drugs, which Sherry and Eric had a history of doing. A.T.1 and A.T.2 had head lice, and M.T. had bruises on his forehead, cheek, leg, and lower back, which the girlfriend stated he had upon his arrival. On that date, September 3, 2009, DHS placed a 72-hour hold on the children.

The court subsequently found probable cause that the emergency conditions which necessitated removal of the juveniles from the custody of the parents continued so that it was necessary that the juveniles continue in the custody of DHS, and it was contrary to the welfare of the juveniles to be returned home. The parents were allowed visitation at DHS once a week, dependent upon negative drug screens.

Following a hearing, an adjudication order was entered on December 8, 2009.[3] Appellants were ordered to attend and complete parenting without violence classes; attend and complete a psychological evaluation and comply with the resulting recommendations; attend and complete a drug-and-alcohol assessment and comply with the resulting recommendations; obtain and maintain housing that is safe, stable, and appropriate; obtain and maintain income that is sufficient to support the family; obtain and maintain transportation that is safe, stable, and ap-

1. A.T.1, born 10/25/2006; M.T., born 01/24/2008; and A.T.2, born 06/29/2009. There is some discrepancy about the children's ages, as noted at the termination hearing, but nothing relevant to this appeal.

2. Eric admitted to using opiates in the recent past, but said he was not caring for the children at the time.

3. The order does not specifically state that the children were found to be dependent-neglect-ed. Appellants did not appeal from the adjudication order, however, and they do not raise this issue in the present appeal. Furthermore, DHS's petition for termination of parental rights alleged that on November 9, 2009, the children were found to be dependent-neglected due to medical neglect and parental unfitness due to drug abuse and addiction, and the attorney ad litem's response admitted that finding.

propriate; comply with random drug screens; and visit the juveniles regularly.

A permanency-planning hearing was held on April 26, 2010, at which time the court continued reunification as the goal of the case. The court found that appellants had not complied with the case plan and court orders in that they lacked independent housing and sufficient income, had not completed parenting classes, had not attended appointments for psychological evaluations, and had not entered the drug-treatment program recommended by their drug-and-alcohol assessment.

A second permanency-planning hearing was held on September 27, 2010, at which time the goal of the case was changed to termination of parental rights and adoption. The court found that appellants had not complied with the case plan and court orders; specifically, they had been sentenced to periods of incarceration and, prior to that incarceration, they failed to visit regularly or take advantage of the services offered by DHS.

DHS filed a petition for termination in January 2011, and the termination hearing was held on April 4, 2011. Appellant Sherry Tankersley, who was twenty-five years old at the time of the hearing, testified that she currently resided at the Fayetteville ADC. She had been arrested on June 19, 2010, for failure to appear for charges of possession of oxycodone, possession of drug paraphernalia, and theft by receiving. Before that, she had been in jail for six days around the time the children had been taken into DHS custody in September 2009. She was incarcerated twice between August 2009 and June 2010—for three weeks in Sebastian County and one week in LeFlore County, Oklahoma. Sherry acknowledged the things that she had to do in order to regain custody of her children. She stated that she did commit other offenses after receiv-ing a suspended sentence for theft by receiving—possession of oxycodone, possession of drug paraphernalia, and theft by receiving. She received a sentence of ten years' imprisonment with ninety-six months suspended. That was the sentence she was then serving, and her first release-eligibility date was August 1, 2011. She also had a deferred sentence of two years in LeFlore County, Oklahoma, and her grandfather was going to pay her fines and restitution in Oklahoma in hopes that she would not be incarcerated there upon her release in Arkansas.

Sherry stated that her crimes were attempts to obtain money for drugs. She had treatment for drug addiction while incarcerated, took parenting classes, and attempted to do everything she could to work toward reunification (e.g., writing letters, attempting to arrange visitation). Upon her release, appellant planned to initially live with her grandfather, find a job, find a place to live, and attend NA meetings. Sherry believed that she needed two months after her release from prison to be able to find employment and be in a position to care for her children. She acknowledged that she owed $2,862 in child support.

Appellant Eric Tankersley testified that he was incarcerated and that his first eligibility date for release was July 1, 2011. He planned to parole out to his brother's house in Van Buren, Arkansas. His sentence was ten years with eighty-four months suspended. Eric stated that he was in the same position as his wife in that Oklahoma had applied to accelerate his deferred sentence. He also owed money in fines and restitution. Eric acknowledged that he did not participate in outpatient treatment between October 2009 and July 2010, which he attributed to his drug use.

DHS caseworker Laura Case testified that she recommended terminating appellants' parental rights. She stated that appellants' testimony that Eric would be out of prison in one month and Sherry in two months were "not reasonable estimates on their part." Case stated that appellants had not worked diligently on their case plan during the nine months that they were not incarcerated. Sherry had not completed a psychological evaluation, and neither appellant had followed the recommendation of the drug assessment. DHS provided drug and alcohol assessments, psychological evaluations, parenting classes, random drug screens, and visitation. When appellants were not incarcerated, they visited "regularly enough that [she] wouldn't recommend [termination] based on no visitation."

The three children were placed in foster care together, with A.T.1 and A.T.2 needing "therapeutic" foster care and receiving counseling because they were impulsive, seriously aggressive, abusive with their peers, untruthful and manipulative, prone to tantrums, and defiant to adults. The children's foster parents had expressed a desire to adopt all three of them.

On cross-examination, Case stated that she had only had face-to-face time with the mother. Sherry did have a desire to work a case plan upon her release. It was Case's opinion that Sherry had made as much progress as possible while she had been incarcerated, but that did not affect Case's recommendation for termination.

In its order terminating parental rights, the court found that DHS had proved by clear and convincing evidence that (1) the parents had been sentenced in a criminal proceeding to a period of time that would constitute a substantial period of the juveniles' lives; and (2) the juveniles had been declared dependent-neglected and had continued in an out-of-home placement for a period in excess of one year. The court found that, despite a meaningful effort on the part of the DHS to rehabilitate the parents and correct the conditions that had caused removal, the parents had failed to remedy those conditions. Appellants filed a timely notice of appeal.

Appellants argue that neither ground the court found for termination is supported by clear and convincing evidence. This court reviews termination of parental rights cases de novo. *Hall v. Ark. Dep't of Human Servs.*, 101 Ark.App. 417, 421, 278 S.W.3d 609, 613 (2008). The grounds for termination of parental rights must be proved by clear and convincing evidence. *Id.* When the burden of proving a disputed fact is by clear and convincing evidence, the question on appeal is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous, giving due regard to the opportunity of the circuit court to judge the credibility of the witnesses. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

Appellants argue that their children "were initially taken into DHS custody on allegations of environmental neglect, medical neglect, and parental unfitness due to drug abuse, all of which had been remedied at the time of the [termination] hearing." Appellants essentially argue that their drug use was the sole reason for removal and that condition had been remedied by their sobriety during incarceration. They contend that the "other issues" ground was not pled or found by the trial court and cannot be a basis for termination.

■ Appellants construe the reasons for removal too narrowly. Appellants' drug use led to their inability to care for their children, causing them to leave the children in the custody of family members who could not provide for the children. So, while appellants had made progress while incarcerated, they still had not shown the capacity to remain drug-free outside of prison or to properly provide for their children. In fact, during the first nine months of this case, while appellants were not incarcerated, they admittedly did not follow the case plan or take advantage of services offered by DHS. The trial court was not required to believe ⌊₈their self-serving testimony at the termination hearing that they had remedied their drug problems and would remain drug-free.

Because only one statutory ground is necessary for termination of parental rights, Ark.Code Ann. § 9–27–341(b)(3)(B) (Repl.2009), we need not address appellants' argument regarding the second ground for termination.

Affirmed.

VAUGHT, C.J., and HOOFMAN, J., agree.