
# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV–15–275

| | |
|---|---|
| BRADLEY SANFORD | **Opinion Delivered** October 21, 2015 |
| APPELLANT | |
| | APPEAL FROM THE MILLER |
| V. | COUNTY CIRCUIT COURT |
| | [NO. 46JV-2013-121-2] |
| | |
| ARKANSAS DEPARTMENT OF | HONORABLE BRENT HALTOM, |
| HUMAN SERVICES AND K.S. AND | JUDGE |
| A.S., MINOR CHILDREN | |
| APPELLEES | |
| | AFFIRMED |

## BART F. VIRDEN, Judge

Appellant Bradley Sanford appeals the January 2015 order of the Miller County Circuit Court that terminated his parental rights to his two children, K.S. (born 8/25/09) and A.S. (born 9/10/11).[1] K.S. and A.S., along with their stepsibling, D.J., were taken into emergency custody by the Arkansas Department of Human Services (DHS) in June 2013 because of allegations of sexual abuse of D.J. and allegations that their mother, Alecia Campbell, was using methamphetamine. At the time the children were removed from the home, Sanford was incarcerated in Texas on forgery charges. DHS filed a petition to terminate Sanford's parental rights on July 29, 2014, which was granted on January 23, 2015, following a hearing. Sanford filed this timely notice of appeal, and he asserts that the circuit court's decision to

---

[1]The parental rights of the children's mother, Alecia Campbell, were also terminated in the same petition, but she is not a party to this appeal.

SLIP OPINION

terminate his parental rights is clearly erroneous because there is insufficient evidence to support it. We disagree, and we affirm.

## I. *Facts*

In late February 2013, Sanford left his children with their mother in Arkansas to seek work in Texas and to remove himself from an unhealthy atmosphere created by Campbell's methamphetamine abuse. In March, Sanford was arrested on forgery charges, and in May, he was sentenced to five years' imprisonment in the Texas Department of Correction. In June 2013, K.S. and A.S. were removed from the home on allegations of the sexual abuse of their stepsibling and on allegations that Campbell was using methamphetamine. Sanford was notified by a summons mailed to him in prison in Texas. In response to the summons, Sanford wrote a letter to the circuit court requesting the appointment of an attorney to represent him in this matter. Sanford also expressed his interest in financially supporting his children and his desire to help find an appropriate guardian for his children. The court did not respond.

A probable cause hearing was held, and K.S. and A.S. were adjudicated dependent-neglected in an order entered July 22, 2013. The goal was set as reunification of the family, and the circuit court ordered DHS to refer services to Campbell. Throughout the case, services were offered only to Campbell, and the case plan concerned only Campbell's progress. In May 2014, the permanency-planning order was entered, and the goal was changed from reunification to adoption based on Campbell's noncompliance with the case plan and her continued drug abuse. The circuit court also found that Sanford had been incarcerated for a substantial portion of the children's lives and was still incarcerated in Texas.

2

In July 2014, DHS filed a petition for termination of parental rights of both Campbell and Sanford. In the petition, DHS asserted three statutory grounds relating to Sanford. DHS asserted that the children had been out of the home for twelve months, and despite meaningful efforts by DHS, Sanford had failed to remedy the conditions that led to removal. The second statutory ground asserted by DHS was that the children had been out of the home for twelve months, and Sanford had failed to provide significant material support. The third ground asserted by DHS was that Sanford had been incarcerated for a substantial period of his children's lives. Sanford wrote a letter to DHS explaining that he had not been informed of the progress of the case and that he believed his letters had not been received by his children. In the letter, Sanford also explained that he had given Campbell's mother, Theresa Johnson, the authority to cash his quarterly disbursement check from the Ho-Chunk tribe, and she had kept the money for herself rather than use it for the children as he intended.

DHS worker LaShama Lee responded to Sanford by letter. In her letter, Lee explained that Campbell had not availed herself of the services offered and that DHS had requested that the circuit court terminate Campbell's parental rights. Lee encouraged Sanford to make copies of all the certificates of any programs he had completed while in prison and have the certificates sent to DHS. Lee also explained that if he wrote letters to his children she would make sure that K.S. and A.S. received them.

In August, Sanford wrote a pro se response to the petition to terminate his parental rights. In his response Sanford requested again that the court appoint an attorney to represent him in this matter, and he argued that he had been very involved in his children's lives until

3

he moved out of the home in February 2013. Sanford also explained that he had attempted to support them financially by allowing the children's maternal grandmother to cash his disbursement checks from the Ho–Chunk nation but that she had kept the money for herself. Sanford explained that the children's grandmother had also led him to believe that he was not allowed to have any contact with K.S. and A.S.

In December 2014, Sanford was released from the Texas prison and was immediately returned to Miller County to serve a revocation-of-probation sentence of six months for a felony domestic-battery charge. Sanford's release date was expected to be in May 2015.

In January 2015, the circuit court held a termination hearing. At the hearing, Sanford admitted that he had prior substance-abuse issues and that these issues had led to the domestic abuse for which he was currently serving time. He testified that he had taken parenting classes and attended drug-counseling sessions, and the court acknowledged the certificate for his completion of drug counseling, though the parenting-class certificate was not in his file. Sanford explained that he left his children with Campbell to get away from her drug abuse and to find work. Sanford admitted that the home was an inappropriate environment for the children. He testified that his projected release date was May 17, 2015, but that it was possible he would be released at a later date.

DHS case worker LaShama Lee also testified at the hearing. She explained that it was not possible for DHS to provide Sanford services while he was incarcerated in Texas but that she had written him and encouraged him to avail himself of services "on the case plan" and that he did that in this case. She testified that, due to Sanford's history of domestic violence

and his present incarceration, she was not recommending giving the children to Sanford, but that he had "completed everything he could" while in prison. She also testified that the children had "particularized needs that require constant supervision." Both children received occupational, speech, and physical therapy, and both children had developmental delays. Lee also noted that A.S. was in therapeutic foster care due to severe allergies and asthma. Lee reported that K.S. and A.S. were both doing well in foster care.

Rita Smith, a CASA worker, testified that she had spoken with Sanford several times and had tried to find out everything she could from him. Smith testified that K.S.'s development issues were more severe than A.S.'s, and he would require special therapy into adolescence and adulthood. She expressed concern that Sanford would be paying $1000 a month to get caught up on his past-due child-support payments and "that's not gonna leave a lot" considering the amount of resources K.S. and A.S. would require. Smith testified that they would require frequent therapy appointments and that she was not sure Sanford could meet the children's intense needs.

After hearing all the testimony, the circuit court ruled from the bench that Sanford's rights should be terminated. In its written order, the circuit court found that it was in the children's best interest to terminate Sanford's parental rights because he was incarcerated and thus, had no residence or employment, and he could not offer a stable environment for the children. The circuit court found that Sanford's testimony that the children were not present during the four acts of domestic violence was not credible. The circuit court also found that Sanford failed to provide material support to a child born of a previous relationship and that



Sanford owed more than $9000 in unpaid child support to the mother of that child, which showed disinterest in his children's best interest.

The circuit court also found that three statutory grounds defined in Arkansas Code Annotated section 9-27-341(b)(3)(B) had been proved to support the termination of Sanford's parental rights, as alleged by DHS. First, the circuit court found that, if Sanford was released in May 2015, he would have been incarcerated for one-half of A.S.'s life and one-third of K.S.'s life and that the sentence constituted a substantial period of the children's lives. Second, the circuit court found that, subsequent to DHS's filing of the original petition for dependency-neglect, other factors or issues arose demonstrating that return of the children to Sanford would be contrary to their health, safety and welfare, and despite a meaningful offer of services the parent has manifested an inability to remedy the circumstances. Specifically, the circuit court found that Sanford's substance-abuse issues and domestic-abuse charges involving the children's mother had come to light after the children had been removed from the home, and his probation on a felony charge relating to the domestic abuse had been revoked subsequent to the original filing. Third, the circuit court found the statutory ground that the children had been out of the home for twelve months and that, despite DHS's meaningful effort to help the parents rehabilitate the home and correct the conditions that led to removal, those conditions had not been remedied. This appeal follows.

## II. *Points on Appeal*

On appeal, Sanford asserts that the circuit court erred in finding sufficient evidence of each statutory ground relied upon in terminating his parental rights. Sanford argues that the

amount of time to which he was sentenced does not constitute a substantial portion of the children's lives. Sanford also argues that he was not given proper notice of any subsequent factors that arose after the filing of the original petition because he had not been included in the case plan and because the first notice he received of the subsequent factors was in the petition for termination.

Sanford also asserts that termination of his parental rights is not in his children's best interest because he presents no potential harm to them as set forth in Arkansas Code Annotated section 9-27-341(b)(3)(A)(ii).[2] Specifically, Sanford contends that the circuit court erred by considering his conduct that occurred before the emergency petition was filed. He also argues that the best-interest determination was in error because he would be employed and have a home upon his release from prison in four months.

Having conducted a de novo review of the evidence, we are not left with a distinct and firm conviction that a mistake was made; and therefore, we affirm.

### III. *Standard of Review*

We review termination-of-parental-rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 (Supp. 2013); The question we must answer on appeal is whether the circuit court's finding that the

---

[2]Sanford does not challenge the second factor of the best-interest determination, adoptability, and concedes that the children are adoptable.

SLIP OPINION

disputed fact was proved by clear and convincing evidence is clearly erroneous. *Fields v. Ark. Dep't of Human Servs.*, 104 Ark. App. 37, 43, 289 S.W.3d 134, 138–39 (2008). In determining whether a finding is clearly erroneous, we give due deference to the opportunity of the circuit court to judge the credibility of the witnesses. *Matlock v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 184, at 6, 458 S.W.3d 253, 256.

### IV. *Applicable Law and Analysis*

Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Osborne v. Ark. Dep't of Human Servs.*, 98 Ark. App. 129, at 133, 252 S.W.3d 138, 141 (2007). Parental rights, however, will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.* The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). A parent's past behavior is often a good indicator of future behavior. *Stephens v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 249, 427 S.W.3d 160. In deciding whether to terminate the parental rights of a party, the circuit court has a duty to look at the entire picture of how that parent has discharged his duties as a parent. *Friend v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 606, at 14, 344 S.W.3d 670, 677.

### A. Best Interest

To terminate parental rights, a circuit court must find by clear and convincing evidence

that doing so is in the best interest of the juvenile, while considering (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. *Hamman v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 295, 435 S.W.3d 495. The potential-harm inquiry must be viewed in a forward-looking manner and in broad terms; there is no requirement that actual harm would result or that the circuit court identify the potential harm. *Knuckles v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 463, ___ S.W.3d ___. There is no requirement that every factor considered be established by clear and convincing evidence; instead, after considering all factors, the evidence must be clear and convincing that termination is in the child's best interest. *Hamman*, *supra*.

Here, Sanford concedes that his children are adoptable, and he challenges only the court's finding of potential harm. He asserts that he has a job with a tree service available to him upon his release in a few months, and he explains that, as a member of the Ho-Chunk tribe, he is eligible for assistance in finding a place to live and receives a quarterly disbursement check of $2700 as income, in addition to what he would make with the tree service. The crux of his argument is that if the court were to allow him more time, he would be able to provide a stable home for his children.

At the termination hearing, Sanford admitted that he had left his children with their drug-abusing mother, in part, because he recognized that it was an unhealthy environment for him. He admitted that it was not a healthy environment for the children, either. Sanford

also agreed that he owed around $10,000 in unpaid child support to the mother of his child from a previous relationship. Sanford testified that, though he had a job lined up and would receive help finding a home, he was incarcerated and would continue to be incarcerated for four more months, possibly longer.

The court's findings that Sanford failed to protect his children from the environment created by the mother's drug abuse, that Sanford had a history of not supporting his child from a previous relationship, and the court's finding that Sanford was currently incarcerated and therefore had no stable home at the time of the termination hearing and for the next few months, support the court's finding of potential harm. Looking at the testimony overall, the potential harm to the children if his parental rights were not terminated is clear: Sanford had a history of putting his needs above those of his children, and the children would remain in DHS's custody for an undetermined amount of time waiting for Sanford to be released from incarceration, get a suitable home, and begin employment. K.S. and A.S., who have already been in DHS's custody for approximately nineteen months, would be required to linger in DHS custody until Sanford is released from jail, and perhaps longer to allow Sanford to find a suitable home. We have held that "this kind of wait-and-see is the definition of the instability that the termination statute is intended to protect children from." *Hamman*, 2014 Ark. App. 295, at 11, 435 S.W.3d at 502. We find no error in the circuit court's finding that it was in the children's best interest to terminate Sanford's parental rights.



### B. Statutory Grounds

#### 1. *Incarcerated a substantial period of the children's lives*

Having affirmed the circuit court's best-interest determination, we turn to the separate, but closely related, point that Arkansas Code Annotated section 9-27-341(b)(3)(B)(viii) (Supp. 2013) provides for termination "when [t]he parent is sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life[.]" We look at the length of the prison sentence, not the potential release date, when reviewing whether this statutory ground was met. *Fields*, 104 Ark. App. at 43, 289 S.W.3d at 148. Only one statutory ground is necessary to terminate parental rights. *Smith v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 753, at 5, 431 S.W.3d 364, 367. The statutory ground of incarceration for a substantial portion of a child's life does not require DHS to provide meaningful efforts to rehabilitate the parents. *Moses v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 466, 5, 441 S.W.3d 54, 57. A child's need for permanency and stability may override a parent's request for more time to improve the parent's circumstances. *Dozier v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 17, 372 S.W.3d 849.

The uncontroverted evidence is that Sanford was incarcerated for the entire nineteen months of the case–from the original removal from the home in June 2013 to the time of the termination hearing in January 2015–and still had four months to serve. Sanford had begun serving his six-month sentence in the Miller County jail in December 2014, and he testified that he expected to be released in May 2015, bringing his total time of incarceration to twenty-three months. This amount of time constituted nearly one-third of A.S.'s life and one-

half of K.S.'s. We hold that the circuit court did not clearly err in terminating Sanford's parental rights.

We need not address the issues Sanford raises concerning the other statutory grounds because only one statutory ground is necessary to terminate parental rights. Ark. Code Ann. § 9-27-341(b)(3)(B); *See, Tankersley v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 109, at 8, 389 S.W.3d 96, 100.

## VI. *Conclusion*

We hold that the circuit court did not clearly err in finding clear and convincing evidence of the statutory ground under Arkansas Code Annotated section 9-27-341(b)(3)(B)(viii) and that it was in the children's best interest to terminate Sanford's parental rights. Because the circuit court did not clearly err, we affirm.

Affirmed.

GLOVER and VAUGHT, JJ., agree.

*Dusti Standridge*, for appellant.

*Tabitha B. McNulty*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.