Cite as 2023 Ark. App. 249

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-22-766

| | |
|---|---|
| LINDA MILLER | Opinion Delivered May 3, 2023 |
| APPELLANT | |
| | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT |
| V. | [NO. 46JV-20-146] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE BRENT HALTOM, JUDGE |
| APPELLEES | AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Linda Miller appeals the Miller County Circuit Court order terminating her parental rights[1] to her children, minor child 1(MC1) born in April 2015; minor child 2 (MC2) born in June 2016; minor child 3 (MC3) born in May 2018; and minor child 4 (MC4) born in October 2019. On appeal, Linda argues that the circuit court erred by finding that a statutory ground supported termination. We affirm.

On December 9, 2020, the Arkansas Department of Human Services (DHS) filed a petition for ex parte emergency custody and dependency-neglect of the children. In the affidavit attached to the petition, DHS alleged that it had received a report that Linda had

---

[1]The circuit court also terminated Dominque Harvey's parental rights to two of the children. However, he is not a party to this appeal.

been using illegal substances, that she had asked people for money to feed the children, and that the children had roamed the hotel where they resided. DHS located Linda and the children at the hotel, and Linda tested positive for methamphetamine, amphetamine, and THC. On December 10, the court entered an ex parte order of emergency custody. On December 18, the parties stipulated to probable cause for the emergency custody.

On March 10, 2021, the court adjudicated the children dependent-neglected based on Linda's failure to provide necessary food, clothing, shelter, and medical treatment for the children. On May 5, the court entered an agreed order to start a trial home visit.

On July 15, the court entered a review order. The court found that Linda had complied with the case plan and court orders. Specifically, the court found that she had maintained housing and a safe environment during the trial visits, had remained sober, had obtained new employment, and had submitted to drug-and-alcohol and psychological assessments.

On August 31, the court entered an order returning custody of the children to Linda. On December 29, the court entered a review order. The court found Linda mostly in compliance with the case plan, but it noted that she had tested positive for THC. On March 22, 2022, the court entered a review order. The court found that Linda mostly in compliance, but it noted that she had been evicted in February.

On April 18, DHS filed a motion for ex parte emergency change of custody. In the affidavit attached to the petition, DHS alleged that MC4 had not received medical treatment for a burn and that MC3 had an injured arm and reported that Linda had pushed her. DHS

also stated that Linda had tested positive for THC, methamphetamine, amphetamine, K2, and fentanyl. On April 25, the court entered an order of emergency change of custody.

On May 2, the court entered an agreed order changing custody to DHS and finding probable cause for the emergency custody. The court ordered DHS to develop a case plan and provide services.

On May 11, the court adjudicated the children dependent-neglected based on Linda's neglect and abuse. The court approved DHS's plan to move toward termination of Linda's parental rights, and it relieved DHS of providing Linda with services. The court also ordered Linda to complete services in the case plan.

On June 30, DHS petitioned to terminate Linda's parental rights. DHS alleged the failure-to-remedy, failure-to-support-or-contact, abandonment, subsequent-factors, and aggravated-circumstances grounds.

On August 17, the court held a termination hearing. Alexis Lampkins, the primary caseworker, testified that the children were removed from Linda's custody in December 2020 for inadequate supervision and food, parental unfitness, and substance abuse. She stated that DHS provided Linda with services and that Linda submitted to a psychological evaluation and a drug-and-alcohol assessment, completed random drug screens, maintained employment, and obtained housing. Lampkins testified that, as a result, in August 2021, DHS returned custody of the children to Linda, but it continued to provide services.

Lampkins explained, however, that in April 2022, DHS again removed the children from Linda's custody after it received reports of medical neglect and parental unfitness. She

stated that MC4 had sustained a burn to a finger and MC3 had injured her arm, but Linda did not seek medical treatment for them. She also noted that Linda had been evicted from her home and that she tested positive for methamphetamine, amphetamine, THC, K2, and fentanyl. Lampkins stated that after the children's removal, the court ordered Linda to complete services, including another drug-and-alcohol assessment and rehabilitation. She noted that DHS made a new referral for inpatient treatment. However, Linda did not complete any further services and did not visit the children.

Lampkins testified that Linda recently moved to Tennessee to live with her biological mother and that since the move, Linda and her mother had started regularly contacting DHS. She noted that the calls were predominantly from Linda's mother and that she heard Linda in the background. Lampkins explained that before Linda moved to Tennessee, Linda called DHS at odd hours and that when she returned Linda's calls, she was unable to reach her.

Lampkins recommended that Linda's rights be terminated. She stated that DHS and all parties had worked "really hard to help" Linda, but she did not take advantage of the services. Lampkins did not foresee any services that could remedy Linda's issues.

Linda testified that she moved to her biological mother's[2] home in Knoxville, Tennessee, about two to three weeks before the termination hearing. She explained that she previously had a strained relationship with her mother, but their relationship had recently

_____

[2]Linda explained that her maternal aunt adopted her as a child because her biological mother went to prison.

improved. She stated that she wanted her mother to have custody of her children until she completed drug treatment. She noted that her mother and her brother had offered to help pay for treatment and that she had visited multiple facilities. She explained that she did not visit her children after April 2022 because she did not know that she could visit them.

Jessica Miller, Linda's mother, testified that she had lived outside Knoxville, Tennessee, for about five years. She noted that before that time, she was in prison for forgery. Jessica explained that Linda had contacted her about three weeks before the termination hearing and asked for help. She stated that Linda had hit "rock bottom" and that Linda wants to be sober. Jessica further stated that Linda is only twenty-five years old and that she failed to realize her dire circumstances with the children. Jessica further testified that because of Linda's age, she can add Linda to her health insurance for treatment coverage. She stated that Linda also needs counseling and that she is not taking medication for her bipolar disorder.

As to her housing, Jessica testified that she has room for the children in her current rental home and that she plans to purchase a house. Jessica stated that Linda has a family support system in the Knoxville area, including grandparents, great-grandparents, and a sister. Jessica stated that Linda understands that she must improve her lifestyle to regain custody of her children.

On September 8, the court entered an order terminating Linda's parental rights based on the failure-to-remedy, abandonment, subsequent-factors, and aggravated-circumstances

grounds. The court further found it was in the best interest of the children to terminate Linda's parental rights. This appeal followed.

Termination of parental rights is a two-step process requiring a termination that the parent is unfit and that termination is in the best interest of the child. *Houseman v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 227, 491 S.W.3d 153. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the child will be adopted and of the potential harm caused by returning custody of the child to the parent. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2021).

Each of these requires proof by clear and convincing evidence, which is the degree of proof that will produce in the finder of fact a firm conviction regarding the allegation sought to be established. *Id.* Our review is de novo. *Dunbar v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 472, 503 S.W.3d 821. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Norton v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 285. In resolving the clearly erroneous question, the reviewing court defers to the circuit court because of its superior opportunity to observe the parties and to judge the credibility of witnesses. *Brumley v. Ark. Dep't of Hum. Servs.*, 2015 Ark. 356.

On appeal, Linda does not challenge the circuit court's best-interest finding. Instead, she argues that the circuit court erred by finding that a statutory ground supported termination of her parental rights. As to the aggravated-circumstances ground, Linda argues that DHS did not prove that services were unlikely to result in reunification. She points out that the children were returned to her custody during the case, and she claims that DHS failed to diligently work to reunify them after she relapsed.

A circuit court may terminate parental rights on the basis of the aggravated-circumstances ground if there is little likelihood that further services will result in successful reunification. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(A)–(B)(i)*. A finding of aggravated circumstances does not require DHS to prove that meaningful services toward reunification were provided. *See Ford v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 211; *Draper v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 112, 389 S.W.3d 58. Nevertheless, there must be more than a mere prediction or expectation on the part of the circuit court that services will not result in successful reunification. *Yarborough v. Ark. Dep't of Hum. Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

We hold that the circuit court did not clearly err in terminating Linda's parental rights based on the aggravated-circumstances ground. Under this ground, DHS was not required to prove that meaningful services were provided. Even so, the evidence showed that DHS had provided Linda with services and returned the children to Linda's custody. Yet, within eight months, the children were again removed because Linda had failed to maintain housing, medically neglected the children, and resumed using illegal substances. At the

7

termination hearing, the DHS caseworker testified that after the children's second removal, DHS offered Linda services, but she did not participate and did not visit the children. Given these circumstances, there was sufficient evidence for the court to find that there was little likelihood that further services to Linda would result in a successful reunification. Because only one ground is necessary to support termination, we do not address Linda's arguments concerning the alternative grounds for termination. *Helm v. Ark. Dep't of Hum. Servs*, 2016 Ark. App. 418, 501 S.W.3d 398. We therefore affirm the circuit court's termination of Linda's parental rights.

Affirmed.

GRUBER and MURPHY, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.