Cite as 2023 Ark. App. 548

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-23-129

| | |
|---|---|
| STACIE HOLLAND AND JERRY HOLLAND | Opinion Delivered November 29, 2023 |
| APPELLANTS | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT |
| V. | [NO. 66FJV-20-122] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE ANNIE POWELL HENDRICKS, JUDGE |
| APPELLEES | AFFIRMED |

**WENDY SCHOLTENS WOOD, Judge**

Stacie and Jerry Holland appeal the Sebastian County Circuit Court's December 12, 2022 order terminating their parental rights. The circuit court terminated Stacie's rights to her biological daughters, Minor Child 1 (MC1), born on May 3, 2013, and Minor Child 2 (MC2), born on September 7, 2017. The circuit court terminated Jerry's parental rights to MC2, finding Jerry is her legal parent because she was born of the marriage between Stacie and Jerry. On appeal, Stacie argues that there is insufficient proof of statutory grounds for termination of her parental rights and insufficient proof that termination is in her daughters' best interest. Jerry challenges only the circuit court's finding that termination is in the best interest of MC2. We affirm.

The Arkansas Department of Human Services (DHS) opened a protective-services case (PSC) involving the Hollands following an October 2019 referral for educational neglect. Intensive Family Services (IFS) was referred due to Jerry's continued drug use and abusive behavior toward both the children and Stacie. In February 2020, MC1 disclosed to an IFS worker that Jerry hit her "on her butt, back, and the back of her head a lot." During an interview on March 2, 2020, she disclosed that Jerry "busted her butt when I do bad stuff[,]" and she showed the worker a bruise. MC1 explained that the family dog had urinated on the floor, and that is when Jerry "hit her 6 times" before Stacie walked in and told him to "stop[,] that it was too much." MC1 said Jerry hits her on her face and head with a belt and that MC2 does not get the same treatment "because he loves her." DHS exercised an emergency hold on the children that day and filed a petition for dependency-neglect against Stacie and Jerry. DHS alleged that the children were at substantial risk of serious harm due to abuse, neglect, or parental unfitness.

On August 3, the circuit court entered an adjudication order finding MC1 and MC2 dependent-neglected due to parental unfitness of both parents and substance abuse by Jerry. The court noted that Jerry continued to use illegal drugs; MC1 had reported acts by the parents constituting physical, psychological, and emotional abuse; Stacie appeared unwilling or unable to protect the children from abuse; and the parents had not utilized the parenting services, substance-abuse treatment, or counseling services that had been offered.

The court set the goal of the case as reunification and ordered both parents to comply with the case plan among other things. In addition, Stacie was ordered to receive counseling

as a victim of domestic violence and to address her anger-management issues during counseling sessions. Jerry was ordered to attend domestic-violence classes, to complete all recommendations from his drug-and-alcohol assessment, and to maintain stable employment. Finally, the circuit court found that Jerry is not MC1's parent.

On August 26 and September 16, the circuit court held a review hearing. The court's review-hearing order, which was not entered until March 8, 2021, found that both Stacie and Jerry tested positive for methamphetamine on August 27, as reflected in hair-follicle test results introduced at the hearing. The goal of the case was changed to reunification with the concurrent goal of adoption, and custody of the children remained with DHS.

On April 21, 2021, the circuit court held a permanency-planning hearing, the order for which was not entered until April 28, 2022. In its order, the court found that DHS had made reasonable efforts to provide family services, but the parents had not completed the case plan. It found that Jerry had suffered an injury that delayed his ability to complete some of the ordered services; Stacie had served as Jerry's caregiver during his convalescence; and due to Jerry's ongoing medical problems, all parties had agreed that additional time for compliance with the case plan was appropriate. The court stated that each of the parents had undergone a psychological evaluation but had participated in only some counseling and classes on parenting without violence, domestic violence, and anger management. Jerry was enrolled in treatment following his drug-and-alcohol assessment but was found to have been less than candid during the assessment. The court ordered him to disclose his prior substance abuse, all prior positive drug screens, and all his criminal convictions and to complete all

recommended treatment. Stacie was ordered to continue to attend counseling sessions, be candid with the counselor, complete counseling as a victim of domestic violence, and address her anger-management issues. Both parents were again ordered to submit to a ninety-day hair-follicle drug test before the next scheduled hearing.

The court held another review hearing on August 4, 2021, the order for which was not entered until March 30, 2022. In the order, the court reiterated the findings it made in its previous order and specifically stated that the parties had agreed to maintain the status quo from the April 21 permanency-planning hearing pending staffing and compliance with the case plan and order.

On January 25, 2022, Stacie and Jerry filed a motion seeking to schedule a hearing, and on March 3, they filed a motion alleging that DHS had made no reasonable efforts toward reunification in over a year. They further alleged that the children's therapist had discontinued family therapy and that they had completed their case plans. They asked the court to make a finding of no reasonable efforts and to order commencement of reunification services. On March 9, the court entered an order scheduling a permanency-planning hearing for March 30, 2022, and ordered hair-follicle testing for Jerry.

In the permanency-planning order, which was not entered until June 21, the circuit court found that the permanency-planning hearing began as scheduled on March 30 but was continued because bad weather prevented the parents from attending. The hearing was rescheduled for April 13, at which time counsel for the parents moved for another continuance because they could not attend due to bad weather. The court noted that the

4

"sun was shining" and denied the continuance. The hearing proceeded in the absence of Stacie and Jerry. The court found that DHS had made reasonable efforts to provide family services and finalize a permanency plan for MC1 and MC2 and that return of custody to the parents was not in the children's best interest. Last, the court found that Jerry had continued to test positive for methamphetamine.

On May 20, DHS and the attorney ad litem filed a petition for termination of parental rights, which was amended on June 24, seeking to terminate Stacie's parental rights to MC1 and MC2 and Jerry's parental rights to MC2. As to both parents, the petition alleged the following grounds: (1) failure to remedy, Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Supp. 2023); (2) subsequent factors, Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*; and (3) aggravated circumstances, Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(B)*.

The circuit court held a termination hearing on August 17. When the case was called, the attorneys for both parents requested a continuance because Stacie and Jerry reported that morning that they both had COVID-19. The court suspended the hearing and ordered DHS to administer COVID-19 rapid tests to Stacie and Jerry in their home and to bring them to court if the tests were negative. Following administration of the tests and Stacie and Jerry's refusal to be brought to court, the court received evidence that the parents' COVID-19 tests administered by DHS were negative; that Stacie and Jerry had been seen at the courthouse earlier that morning; that the photographs of the image of the positive COVID-19 tests that the parents had texted to their attorneys were identical to test photographs found online, which contained identical test numbers; and that Jerry screamed and cursed

5

at the DHS caseworker and the CASA volunteer who were sent to administer the tests, he initially refused to let them inside the house, and he slammed the door shut on them. The circuit court denied the parents' request for a continuance, and the termination hearing proceeded in their absence.

Joshua Brown, a DHS employee, testified that he was assigned to the Holland's PSC and that the family was provided the following services: transportation, drug-and-alcohol assessments, parenting classes, and IFS. Brown testified that the parents tested positive for methamphetamine multiple times and that there were reports that Jerry was yelling at the children and Stacie. Brown stated that the children ultimately went into the care of DHS after MC1 disclosed that Jerry had hit her.

Bridget Cornett, a program assistant for DHS who transported the children to visits with their parents, testified that Stacie disclosed to her that Jerry would spank the children with belts on areas that he should not. Cornett, who observed the visits, also testified that Stacie showed favoritism toward MC2.

Dr. Martin Faitak, the psychologist who evaluated both Stacie and Jerry, testified that Stacie reported that Jerry had problems with anger, drug use, and maintaining employment, but she was dependent on him and planned to stay with him. She admitted that she gets physically abusive toward Jerry when they argue. Dr. Faitak further stated that Stacie's test results indicated that she is resistant to treatment and feels there is little need to change her behavior. Regarding Jerry, Dr. Faitak said that he had admitted using methamphetamine, had too many DWIs and DUIs to count, and had previously been arrested for domestic

6

violence. Jerry denied that he had abused anyone and said that Stacie was abusive. Dr. Faitak diagnosed Jerry with antisocial personality disorder and indicated that Jerry was unlikely to modify his behavior because he saw no need to do so.

Amanda Myer, a case manager at 100 Families, explained that Jerry had enrolled in the 100 Families program, but Stacie had not, so a specific referral for Stacie could not be made. Myer said she had offered to enroll Stacie in the program, but the parents were not able to make it to an appointment. Nevertheless, Myer testified that services her organization provided to Jerry benefited Stacie: assistance with paying rent; help moving the family into a new apartment; and the provision of food deliveries, clothing, cleaning products, Angel Tree presents for the children at Christmas, and furniture; referrals for Jerry's drug addiction; and referrals for marriage counseling.

Chelsea Sewell, a DHS caseworker and supervisor, testified that she offered Stacie the name and phone number of a shelter along with transportation to a shelter if she felt unsafe at home. Sewell said that she received more than one phone call from Stacie when she and Jerry were fighting. Sewell could hear Jerry yelling. Sewell told Stacie DHS would pick her up or aid her, but Stacie refused. Sewell also testified that although both parents had completed classes, including parenting without violence and domestic-violence intervention, Stacie and Jerry had not demonstrated a genuine change in behavior sufficient to overcome the barriers to reunification.

Kathy Patton, a counselor, testified that the Hollands' home life was chaotic. She said that MC1 revealed there was a lot of yelling and hitting and that she is "very afraid." Patton

7

witnessed Jerry shove MC1 and Stacie. Patton read from her notes from one of her sessions with Jerry: "An entire hour and a half yelling loudly and blaming the girls and his wife for everything wrong in his life. Very angry and negative for everybody." Patton also said that Stacie shared that she and Jerry regularly argue and fight. Patton said that Stacie was unwilling to leave Jerry, however, because he takes care of them, and she could not make it on her own.

Counselor Robin Williford provided child-parent psychotherapy with Stacie and her girls and individual counseling with Stacie and Jerry. Williford noted that Stacie admitted Jerry had abused her and MC1, and Stacie said that if MC1 had just gone to her room as Stacie told her to do, Jerry would not have gotten so upset and hurt her. Stacie admitted that Jerry's abusive behavior toward her (Stacie) had continued even after the girls had been placed in foster care. Williford addressed with Stacie her need to protect herself and the girls from harm, but Stacie was unwilling to make any changes. In November 2021, Williford recommended discontinuation of family therapy sessions with Stacie and Jerry because in two years of therapy, the parents had not made sufficient progress. Williford said Stacie shows no ability to manage confrontation in an appropriate manner. Williford also noted that Jerry indicates there is no need to change any of his behaviors, blames Stacie for the fighting in the home, and made veiled threats to anyone who got between him and his children. Williford noted that there is no goal to work on with the parents because neither was willing to identify things that they can change to make the home life safe and reduce

conflict. Williford also offered examples of Stacie and Jerry demonstrating favoritism of MC2 over MC1.

Finally, DHS caseworker Melissa Kaupp testified that while Stacie and Jerry had completed their case plans, they did not apply the information they learned. Kaupp testified that there was a risk of harm if MC1 and MC2 were returned to their parents due to ongoing drug use by both parents and concerns about Jerry's anger management and verbal and physical abuse. Kaupp stated that MC1 is extremely fearful of the abuse and that the mental impact of the "extreme" favoritism of MC2 over MC1 had adversely affected both children. Kaupp also testified that MC1 and MC2 are adoptable.

At the conclusion of the evidence, the circuit court granted the petition to terminate Stacie's and Jerry's parental rights, finding that DHS had proved the statutory grounds of failure to remedy, subsequent factors, and aggravating circumstances and that termination was in the best interest of MC1 and MC2. The court restated these findings in its order entered on December 12, 2022. The court also found that Jerry had no parental rights to terminate as to MC1 as the result of the court's previous finding that he is neither the biological nor the legal parent of MC1. This appeal followed.

This court reviews termination-of-parental-rights cases de novo. *Lloyd v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 461, at 7, 655 S.W.3d 534, 540. Termination requires a finding of at least one statutory ground and a finding that termination is in the child's best interest. *Id.* at 8, 655 S.W.3d at 540. Arkansas Code Annotated section 9-27-341(b)(3) requires a circuit court's order terminating parental rights to be based on clear and convincing

9

evidence. *Id.*, 655 S.W.3d at 540. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Baker v. Ark. Dep't of Hum. Servs.*, 340 Ark. 42, 48, 8 S.W.3d 499, 503 (2000). When the burden of proving a disputed fact is by clear and convincing evidence, the question that must be answered on appeal is whether the circuit court's finding was clearly erroneous. *Tankersley v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 109, at 7, 389 S.W.3d 96, 99. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*, 389 S.W.3d at 99. This court gives a high level of deference to the circuit court because it is in a far superior position to observe the parties before it and to judge the credibility of the witnesses and the weight of the evidence. *Barnett v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 481, at 4–5.

## I. *Stacie*

In her first point on appeal, Stacie argues that the circuit court clearly erred in finding that DHS proved statutory grounds necessary to terminate her parental rights. The circuit court found that three grounds supported termination of Stacie's parental rights. Only one statutory ground is necessary to terminate parental rights. *Willis v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 559, at 9, 538 S.W.3d 842, 848. We hold that the circuit court did not clearly err in finding that Stacie subjected MC1 and MC2 to aggravated circumstances.

Aggravated circumstances is defined to include a determination made by a judge that there is little likelihood that services to the family will result in successful reunification. Ark.

Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(B)(i)*. Here, the record demonstrates that despite having received almost three years of numerous services, Stacie has not developed the skills necessary to have the children safely returned to her custody. The testimony and reports of numerous witnesses show that Stacie conceded that physical and verbal abuse had occurred in the home. Stacie nevertheless was unwilling to make any changes and was resolute in her decision to stay with Jerry because he provided for her and the children and she could not make it on her own. In therapy sessions with Williford, Stacie's answer to the abuse was not to resolve it but to learn to live with it. She noted that the abuse was not as bad as that she had suffered as a child and suggested that the children could have avoided Jerry's emotional and physical abuse by taking her advice and going to their bedroom. DHS caseworker Sewell further testified that Stacie had resisted efforts to assist Stacie in seeking safety from the abuse in a shelter. Sewell and Williford testified that Stacie had not learned from the services. There was still aggression, yelling, cursing, and anger in the home with no indication of any genuine change. As the circuit court noted in its oral findings, Jerry's volatile behavior continued up to the morning of the termination hearing. Dr. Faitak testified that Stacie was resistant to treatment and feels there is little need to change her behavior.

On the basis of this evidence, we cannot say that the circuit court clearly erred in finding that Stacie subjected MC1 and MC2 to aggravated circumstances. Despite all the services provided and offered to Stacie, the evidence demonstrates that she is unable or unwilling to protect her children from the harm that caused their removal. This court has held that a parent's continued inability to protect and care for her child and failure to benefit

11

from the services provided are sufficient to demonstrate little likelihood that further services will result in a successful reunification. *Reyes-Ramos v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 46, at 11, 571 S.W.3d 32, 38; *Bentley v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 374, at 11–13, 554 S.W.3d 285, 292–93. We further have held that when a case involves physical abuse, it is extremely important for a parent to demonstrate an ability to protect the child from physical harm before the child can return to the parent's custody. *Bentley*, 2018 Ark. App. 374, at 11–12, 554 S.W.3d at 292–93 (noting appellant would not acknowledge abuse to her child by live-in boyfriend until he had been sentenced for the abuse). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Cobb v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 85, at 6, 512 S.W.3d 694, 697.

Moreover, the evidence shows that Stacie was using drugs during the pendency of the case. She tested positive for methamphetamine on August 27, October 26, and November 10, 2020. On June 23, 2022, just a few months prior to the termination hearing, she tested positive for methamphetamine. *Kloss v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 389, at 7, 585 S.W.3d 725, 729; (holding that continued drug use supported termination under aggravated-circumstances ground); *Ladd v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 419, 526 S.W.3d 883 (same); *Shaffer v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 208, 489 S.W.3d 182 (same).

Stacie's only argument challenging grounds is that DHS failed to provide her adequate services and that she was "often an afterthought" to Jerry, who received more

services than she did. A finding of aggravated circumstances does not require DHS to prove that meaningful services toward reunification were provided. *Miller v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 249, at 7, 666 S.W.3d 879, 884; *Richardson v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 451, at 8–9. Nevertheless, the record reveals that DHS provided Stacie with many services for almost three years. Stacie's argument that she did not receive as many services as Jerry is a request that this court reweigh the evidence in her favor and second-guess the circuit court's determinations, which we will not do. *Gibby v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 146, at 24, 643 S.W.3d 794, 808.

We hold that the circuit court did not clearly err in finding that DHS proved that there is little likelihood that services to the family will result in successful reunification. Accordingly, we affirm the court's aggravated-circumstances finding against Stacie. In light of this holding, we need not discuss the remaining grounds found by the circuit court. *Id.* at 24–25, 643 S.W.3d at 809.

Stacie next challenges the circuit court's best-interest finding. To terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. *Migues v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 439, at 10, 586 S.W.3d 221, 227–28.

13

In considering potential harm caused by returning a child to the parent, the court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Fox v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 666, at 7, 448 S.W.3d 735, 739. Additionally, whether DHS provided or failed to provide a service has no bearing on whether the children would suffer potential harm if returned to the parent. *Holdcraft v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 151, at 11, 573 S.W.3d 555, 562. The potential-harm analysis is to be conducted in broad terms, and a parent's past behavior is often a good indicator of future behavior and may be viewed as a predictor of likely potential harm. *Louissaint v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 494, at 7, 611 S.W.3d 709, 713.

Stacie does not challenge the adoptability prong of the circuit court's best-interest finding; rather, she argues that there is insufficient evidence of potential harm. She contends that she has a bond with her daughters, she completed her case plan, her drug use is minimal, DHS did not provide adequate services to her, and there was no evidence of potential harm to MC2 specifically.

As previously stated, despite the provision of ample services and completion of the case plan, the evidence shows that Stacie is unable or unwilling to protect her children from the harm that caused their removal. She continues to reside with Jerry, who has been emotionally and physically abusive to her and the children, and the evidence demonstrates that Jerry's volatile behavior continued the day of the termination hearing. This court has previously held that continuing in a relationship with the abuser of one's child is evidence of potential harm. *Bair v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 481, at 6. In addition to

14

the instability in the home, Stacie did not maintain a drug-free lifestyle. This court has held instability, illegal drug use, or failure to comply with court orders constitutes sufficient evidence of potential harm. *Johnson v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 313, at 11, 603 S.W.3d 630, 636; *Lloyd v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 461, at 12, 655 S.W.3d at 542.

We further note that the evidence demonstrates that MC2 was not spared from the effects of the emotional and physical abuse in the home, as Stacie argues. Williford's reports of her therapy sessions with Stacie and the children indicate that both children have been diagnosed with posttraumatic stress disorder and anxiety because of the emotional and physical abuse in the home. Like MC1, MC2 had "stomach issues" around visitation times. Williford noted that both children said that during episodes of volatility between their parents they would go to their room but would "sit with the door cracked watching mom and dad fight it out." Kaupp testified that the difference in treatment of the two girls by the parents had an adverse impact on both children. Kaupp further stated that both children were emotionally drained after visits with Stacie.

This court has previously held that the existence of a bond between the biological parent and child may not be sufficient to prevent termination of parental rights when weighed against other facts in the case. *Lemon v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 253, at 6. Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for her child. *McKinney v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 475, at 20, 527 S.W.3d 778, 791.

Finally, Stacie argues that the circuit court failed to enter orders in a timely fashion and failed to conduct timely hearings in violation of the Juvenile Code, which she contends were not in the best interest of her children. DHS and ad litem counsel argue that Stacie failed to preserve this argument because she did not raise it below. We agree that Stacie did not make this argument below, and thus it is not preserved for our review.[1] *See Klossv*, 2019 Ark. App. 389, at 9, 585 S.W.3d at 731 (holding that this court will not address arguments that are raised for the first time on appeal).

Given the facts of this case, we cannot say that the circuit court clearly erred when it determined that the children would be at risk of potential harm if returned to Stacie's custody and that terminating her parental rights was in the children's best interest. Accordingly, we affirm the circuit court's order terminating Stacie's parental rights.

## II. *Jerry*

---

[1]Regardless, this argument lacks merit. First, while the record reveals that there were multiple delays in the entry of orders and in holding hearings, the record also reflects that the COVID-19 pandemic and weather caused delays in some of the proceedings and that the Hollands expressly waived delays in several hearings. Furthermore, the parties agreed to maintain the status quo following the April 21, 2021 permanency-planning hearing so that the parents could be afforded more time for compliance with the case plan due, in part, to an injury Jerry had suffered during the pendency of the case. Second, this court has consistently held that although the Juvenile Code sets forth time frames for conducting dependency-neglect proceedings, the legislation does not require reversal for noncompliance. *Blasingame v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 71, at 8–9, 542 S.W.3d 873, 877–78 (noting our precedents unequivocally hold that compliance with the statutory time frames is a matter of best practice and does not warrant reversal or other sanction). Nevertheless, "we strongly encourage the circuit courts to abide by these timelines because compliance is in the juveniles' best interests." *See Picinich v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 288, at 4, 549 S.W.3d 916, 919.

Jerry first argues that the circuit court's finding that he is not MC1's parent is erroneous and requires reversal of the best-interest finding as to MC2. Jerry contends that he is in fact MC1's legal parent, and as her parent, he retains parental rights to her that remain unresolved, which impedes the permanency plan for MC2 to be adopted with MC1 and is not in MC2's best interest. His sibling-separation argument rests on his assertion that he is the parent of MC1. In support of this argument, Jerry relies on several orders that were entered prior to termination in which the circuit court found that Stacie and Jerry had signed an acknowledgement of paternity regarding MC1 on October 18, 2017. Jerry argues that these references to an acknowledgment of paternity demonstrate that the circuit court's finding in the termination order is erroneous under Arkansas Code Annotated section 9-27-303(41)(C)(ii) (Supp. 2023) because the definition of "parent" includes a man "[w]ho has signed an acknowledgment of paternity[.]"

Jerry's argument is premised on a parentage finding that was made in the adjudication order:

> [MC1] was conceived and born to Stacie Dannielle Carter (now Holland), an unmarried mother. Jerry Allen Holland has acknowledged that he is not [MC1's] biological father. Stacie and Jerry were married on or about March 22, 2017 in Muskogee, Oklahoma, almost three (3) years after [MC1's] birth. Jerry Holland asserted at the Probable Cause hearing on March 11, 2020 that he had legally adopted [MC1]. However, that is not the case. He and the mother did sign the Acknowledgment of Paternity on October 18, 2017, knowing with certainty at that time that Jerry Holland could not possibly be the biological father of [MC1]. He is not a parent to [MC1]. No evidence regarding the identity of [MC1's] biological father has been presented.

However, Jerry did not appeal from the adjudication order in which the circuit court stated that he and Stacie had signed an acknowledgment of paternity but found that he is not MC1's parent.

An adjudication order is an appealable order in a dependency-neglect proceeding. Ark. Sup. Ct. R. 6-9(a)(1)(A) (2020). When a party fails to appeal from an adjudication order and challenge the findings therein, he is precluded from asserting error on appeal with respect to those findings from an order terminating parental rights. *Denen v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 473, at 5, 527 S.W.3d 772, 775. Thus, this court does not question the circuit court's finding that Jerry is not MC1's parent because that fact has been established by the unchallenged adjudication order.[2] *Villasaldo v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 465, at 6–7, 441 S.W.3d 62, 66 (stating that "this court does not question whether Villasaldo indeed failed to protect her son from abuse because that fact has been established" by the adjudication order that Villasaldo failed to appeal). Because there was no challenge to the circuit court's finding that Jerry is not MC1's parent, there is no impediment to the adoptability of MC1 and MC2, and Jerry's best-interest sibling-separation argument fails.

Like Stacie, Jerry argues that the circuit court failed to enter orders in a timely fashion following hearings and failed to conduct timely hearings. For the same reasons discussed earlier as to Stacie, this argument is not preserved and lacks merit in any event. Given the

---

[2]We note that Jerry's counsel argued at the termination hearing that, as to MC1, "[Jerry] is not the legal father of [MC1]" and that "he has no rights that can be terminated."

evidence supporting the circuit court's best-interest finding, we are not left with a definite and firm conviction that the circuit court clearly erred in finding that termination of Jerry's parental rights was in MC2's best interest. Accordingly, we affirm the circuit court's order terminating Jerry's parental rights.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for separate appellant Jerry Holland.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for separate appellant Stacie Holland.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.